STEPHEN M. BULL, Respondent, *v.* JAMES P. CASE, Appellant.

BENEFIT INSURANCE — FUND PAID TO FRATERNAL BENEFICIARY, NOT EXEMPT FROM ATTACHMENT FOR HIS DEBTS. Section 238 of the Insurance Law, providing that "All money or other benefit, charity, relief or aid to be paid, provided or rendered by any such society, order or association, whether voluntary or incorporated under this article or any other law, shall not be liable to be seized, taken or appropriated by any legal or equitable process, to pay any debt or liability of a member, beneficiary or beneficiaries of a member," does not include the case of money after it has been actually paid over and received by the beneficiary, and, therefore, a security representing a part of such money is liable to an attachment for a debt of the beneficiary.

*Bull* v. *Case*, 41 App. Div. 391, affirmed.

(Argued November 12, 1900; decided February 5, 1901.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 13, 1899, reversing an order of Special Term, vacating an attachment in favor of plaintiff and setting aside a levy made thereunder.

The facts, so far as material, and the material question certified are stated in the opinion.

*C. E. Cuddeback* for appellant. Money received from fraternal benefit societies is exempt from execution by the provisions of the Insurance Law. (L. 1892, ch. 690, §§ 233, 238, 292; *F. N. Bank* v. *How*, 67 N. W. Rep. 994; *Schillinger* v. *Boes*, 3 S. W. Rep. 427; *Matter of Lynch*, 83 Hun, 464.)

*Caleb Birch, Jr.*, and *C. F. Brown* for respondent. Section 238 of the Insurance Law (L. 1892, ch. 690) does not exempt from execution money paid by the Supreme Council of Royal Templars of Temperance to the defendant, and the bond and mortgage which represents a part of the money received by him was subject to levy under an attachment by the sheriff for the debt due by the defendant to the plaintiff. (*Bolt* v. *Keyhoe*, 30 Hun, 619; 96 N. Y. 646; *People* v. *S. L. Ins. & A. Co.*, 78 N. Y. 114; *Matter of Attorney-General* v. *G. M. L. Ins. Co.*, 82 N. Y. 336.)

WERNER, J. The plaintiff procured an attachment against the defendant, which was levied upon a bond and mortgage received by the latter from his son upon a loan of moneys which were the proceeds of a beneficiary certificate, issued by the Supreme Council Royal Templars of Temperance, upon the life of Mary E. Case, the wife of the defendant. This attachment was vacated by the Supreme Court at Special Term upon the ground that under the provisions of section 238 of the Insurance Law (Chap. 690, L. 1892) the bond and mortgage represented in part the proceeds of said beneficiary certificate and were, therefore, exempt from attachment or execution issued against the defendant as such beneficiary. The order of the Special Term was reversed by the learned Appellate Division; a majority of that court holding that said bond and mortgage were not exempt from attachment or execution. Leave to appeal to this court was granted, and three questions were certified to us for decision. As our answer to the first of these questions is decisive of the case we shall not refer to or quote the others. The first ques-

tion is: "Does the money or other benefit * * * to be paid, provided or rendered by any fraternal beneficiary society, include the case of money after it has been actually paid over and received by the beneficiary, or is the exemption confined to cases where the insurance or benefit contracts are outstanding and have not as yet matured or the sums due thereon been paid?" The answer to this question depends upon the construction of said section 238 of the Insurance Law. This is to be gathered from its own context as well as from other statutes upon the same subject. That portion of said section 238 which applies to the question before us reads as follows: "All money or other benefit, charity, relief or aid *to be paid*, provided or rendered by any such society, order or association, whether voluntary or incorporated under this article or any other law, shall be exempt from execution, and shall not be liable to be seized, taken or appropriated by any legal or equitable process, to pay any · debt or liability of a member, beneficiary, or beneficiaries of a member." It will be seen at once that the meaning of this part of the section turns upon the interpretation to be given to the words "to be paid." Do they create an exemption of the fund while in the hands of the insurance company or society; or do they exempt the moneys paid from said fund after they reach the hands of the beneficiary, from the payment of "any debt or liability of a member, beneficiary, or beneficiaries of a member?" The words "*to be paid*" seem to have been carefully chosen to exclude the possibility of a construction which would exempt such moneys from the payment of debts or liabilities of members or other beneficiaries after they have been paid over. The exemption refers not to moneys paid or when paid, but "to be paid." This view accords not only with the ordinary and appropriate use of the language employed, but with the obvious purpose of the legislature. This was not to create a new class of exemptions, but to protect membership insurance societies, as well as their members and beneficiaries, from the annoyances and harassing inconveniences which would result if a beneficiary fund, in which each member and beneficiary has

at least an equitable interest prior to the member's death, could be the subject of attack by importunate creditors of said members and beneficiaries. Such an organization would be kept so busy answering the demands of legal proceedings against its members and beneficiaries as to be unable to carry out the design of its being, unless the moneys comprising its beneficiary fund were protected until they passed from its hands.

In addition to all this it is familiar human experience, that men who have been so unfortunate as to contract debts which they cannot pay, frequently resort to life insurance as the only hope of leaving something to those who are dependent upon them for support. In such a case the exemption of the general fund secures to the beneficiary the payment of his share of it without liability for the debts of the deceased member. It will readily be seen that in exempting the beneficiary fund of such organizations the legislature has gone further than the individual member could go for the protection of himself or his beneficiary. Under this law an embarrassed debtor can take such moneys as he may have and invest them in insurance that will be safe from the process of his creditors and will be sure to reach the beneficiary. Any individual effort to create a fund for the same purpose would be futile because it could be taken by creditors if found. There is, therefore, in addition to the exemption for the benefit of such organization another for the benefit of members. But it stops there. Just as any money or property which is left by a decedent may be taken for the debts or liabilities of those to whom it is given after it has been paid to them, so the proceeds of an insurance policy or certificate may be compulsorily devoted to the same purpose when the beneficiary comes into possession thereof.

It would undoubtedly be competent for the legislature to extend exemptions of insurance moneys to the full extent contended for by the appellant. But as the law does not favor exemptions, they are not to be created or extended by implication, and there is nothing in the language of this statute

which permits us to go beyond its clearly defined limits; nor is there anything in the history of the legislation upon this subject which aids the appellant in his contention. Said section 238 of the Insurance Law (Chap. 690, L. 1892) is a re-enactment in terms of section 13, chap. 520, L. 1889. The last expression of the legislature upon this subject prior to 1889 was contained in chap. 116, L. 1884, which extended exemptions of insurance moneys to " that part of such beneficiary fund paid to the widow of a deceased member of such corporation designated as the beneficiary thereof, and to exempt the same from execution for her debts." It was under this explicit legislative declaration that *Matter of Lynch* (83 Hun, 462; 150 N. Y. 560) was decided. Neither that statute nor the case cited have any application here. That statute was far in advance of any previous or subsequent enactment upon this subject and was repealed by the act now under consideration. Prior to 1884 the law upon this subject was contained in section 19, chap. 175, L. 1883, which provided that " the money \* \* \* *to be paid* \* \* \* shall be exempt from execution, and shall not be liable to be seized, taken or appropriated by any legal or equitable process, to pay any debt or liability of a member." The only addition made by the laws of 1889 and 1892 was of the words " beneficiary or beneficiaries of a member." Thus it will be seen that the history of this law is consistent with the construction which we give it, and that the exception found in the law of 1884 emphasizes the statement that when the legislature has attempted to extend this class of exemptions beyond the limits fixed by the statute of 1892 it has done so in explicit terms.

When we look beyond the statute and its history into the public policy which underlies such legislation, we are equally unable to find any support for the suggestion that the statute was intended to exempt such insurance moneys in the hands of beneficiaries. It is common knowledge that fraternal benevolent insurance corporations exist in great numbers. Many men are members of several of these organizations. There is no limit upon the number of such policies or certifi-

cates which a man may hold. A member's family may at his
death receive an aggregate sum amounting to a comfortable
fortune and yet, if appellant's contention is sustained, escape
the payment of just obligations created upon the promise
to pay out of this very fund. While such exemptions might
be favored to a limited extent for reasons which we need
not now discuss, it is obvious that no principle of pub-
lic policy can justify unlimited exemptions of such moneys,
and nothing but the explicit and unqualified fiat of the
legislature would warrant the courts in going to that extent.
There is no true analogy between the principle which
controls this class of exemptions and that upon which exemp-
tions in favor of soldiers' pensions and bounty is founded.
The latter form a class by themselves. As was stated in the
prevailing opinion below, " The reason of this special privilege
is plain ; pensions are granted only to the soldier whose dis-
ability has been occasioned by service to the country and who
has thus become incapacitated either in whole or in part from
providing for himself and his family. It is but just that the
creditor should have no claim on the property which proceeds
solely from the bounty of the government, and that he who
has supported the state by service in war should be relieved
from further contributions to its maintenance while in a
dependent condition."

These views require an affirmance of the order of the
Appellate Division, and a negative answer to the first ques-
tion certified to this court herein.

The order should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN and LANDON, JJ., concur ;
HAIGHT, J., dissents ; CULLEN, J., not sitting.

Order affirmed.