**STATE ex rel. LANKFORD, State Bank Com'r, v. COLLINS et al.**

No. 8749—Opinion Filed July 30, 1918.

(174 Pac. 568.)

**1. Exemptions—Fraternal Insurance Associations—Rights of Beneficiaries.**

Facts in the instant case examined, and held, that the fraternal order known as Modern Woodmen of America is a fraternal insurance association as contemplated by article 3, c. 38, Revised Laws 1910, and that the money or other benefit coming to the beneficiary from a certificate of insurance on the life of one of its members is exempt from legal process for the debts of such beneficiary under section 3498, Revised Laws 1910.

**2. Same—Who May Claim Exemption.**

The exemption from legal process of the money, other benefit. charity, relief, or aid provided for in section 3498, Revised Laws 1910, may be invoked in favor of any beneficiary in a certificate of insurance on the life of a member of a fraternal insurance association whether such beneficiary is a nonresident or resident of the state.

**3. Same—Who May Question Right.**

A creditor who seeks by garnishment to reduce the money due to the beneficiary in a certificate of life insurance duly issued by a fraternal insurance association as defined by statute cannot raise the question of the dependance of the beneficiary on the insured in order to relieve the fund from the opera-

tion of the law rendering it not liable for the debts of the beneficiary.

### 4. Exemptions—Construction of Statute.

The rule that exemption statutes are not favored and are to be strictly construed does not apply in this state, but such statutes will be given a reasonable construction in favor of the purposes and objects of the exemption authorized.

### 5. Same — Fraternal Insurance Associations—Limitation of Right.

The expression "to be paid, provided or rendered," in section 3498, Revised Laws 1910, exempting from legal process "the money or other benefit, charity, relief or aid to be paid, provided or rendered" by fraternal insurance associations, is merely descriptive of the benefits which the statute authorizes such associations and the members thereof to provide; it being contemplated that, the benefits not existing at the time of enacting the law, they would afterwards be provided for and would inure or accrue in futuro, and the expression, being descriptive of the benefits and not of exemption, does not limit the exemption to any particular time or to any condition other than as expressed in the section.

(Syllabus by Stewart, C.)

Error from Superior Court, Muskogee County; H. C. Thurman, Judge.

Action by the State, on the relation of James D. Lankford State Bank Commissioner, against T. J. Collins and Emma R. Collins; the Modern Woodmen of America as garnishee. From an order dissolving the garnishment, the State brings error. Affirmed.

Harlow A. Leekley and Franklin P. Schaffer, for the State.

Vilas V. Vernor, for defendants in error.

Opinion by STEWART, C. The plaintiff in his official capacity as bank commissioner having taken over the assets of the insolvent Union State Bank of Muskogee, Okla., brought suit against defendants on a promissory note executed by the defendants to such bank in the sum of $3,500 and also instituted garnishment proceedings naming the Modern Woodmen of America, a fraternal insurance association with local camp and organization at Muskogee, as garnishee. Muskogee Camp No. 7114, Modern Woodmen of America, filed verified answer in the garnishment proceedings denying that it owed any money or held any property belonging to the said Emma R. Collins. Thereafter the Modern Woodmen of America filed answering affidavit admitting that it was indebted to the defendant Emma R. Collins in the sum of $2,000 upon a benefit certificate issued on the life of her son, Oakey F. Collins who died April 30, 1916, and setting forth that the garnishee is a fraternal insurance association, organized for the benefit of its members and their beneficiaries with death benefits payable to the families, heirs blood relatives, or persons dependent upon its members, and further facts showing that the indebtedness owing to the defendant Emma R. Collins, under section 3498, Revised Laws 1910, was not subject to attachment, garnishment, or to be taken or appropriated by any legal or equitable proceeding or by operation of law to pay the debts or liabilities of a certificate holder or any beneficiary named in the certificate or any person having a right thereunder. Later the defendant Emma R. Collins filed motion to dissolve the garnishment, pleading the same state of facts set forth in the answering affidavit of the Modern Woodmen of America, and asking that the garnishment be dissolved and the money released. Motion to strike the motion to dissolve garnishment was filed by the plaintiff and overruled by the court, and afterwards the plaintiff filed reply and answer to the affidavit of the garnishee and also response to defendant's motion to dissolve, in which reply and response the plaintiff denied that the $2,000 named was exempt from garnishment for the debts of the said Emma R. Collins, asserting that the said Emma R. Collins was a nonresident of the state of Oklahoma, not entitled to the benefits of the exemption laws of the state of Oklahoma, and had not and cannot meet the conditions and requirements of article 3, c. 38, Revised Laws 1910, relating to fraternal insurance associations. After hearing the testimony, the court sustained the motion of defendant to dissolve garnishment and discharge the garnishee, from which action of the court, the plaintiff prosecutes error to this court.

It is undisputed that the Modern Woodmen of America is a fraternal insurance association as contemplated and defined by statute, and that the defendant Emma R. Collins was the mother of Oakey F. Collins, deceased and the beneficiary named in the certificate issued on the life of the said Oakey F. Collins. The evidence shows that, at the time the action was brought, the defendant Emma R. Collins was living in California with her husband, T. J. Collins, the other defendant. The question of nonresidence is in dispute. But on the assumption that she was a nonresident, we will under-

take to construe that part of article 3, c. 38, Revised Laws 1910, relating to fraternal insurance associations, being running section 3498, Revised Laws 1910, which read as follows:

"The money or other benefit, charity, relief or aid to be paid, provided or rendered by any association authorized to do business under this article shall not be liable to attachment by trustee, garnishee or other process, and shall not be seized, taken, appropriated or applied by any legal or equitable process, or by operation of law, to pay any debt or liability of the certificate holder, or of any beneficiary named in any certificate, or any person who may have any right thereunder."

It is claimed by plaintiff in his brief that it is the settled policy of this state that exemption laws are not available to nonresidents, and therefore Emma R. Collins cannot claim the benefits of the section quoted. Our general exemption statute is found in Chapter 34, Revised Laws 1910, and provides for certain exemptions to heads of families, as well as to persons not heads of families who are residents of the state. If the statute under consideration in the case at bar is construed to be an exemption statute, it is not a part of the general exemption statute, and we have no general law which either in effect or in words deprives nonresidents of the benefit of exemptions other than as defined in chapter 34, supra. If we hold that the provisions of section 3498, supra, do not inure to the benefit of nonresident beneficiaries, we must do so by construction, and not because of express statute; for there is nothing in the section under consideration, or in the entire chapter on fraternal insurance associations, which can be construed as authority for holding that the protection afforded does not apply to nonresidents. In fact, the language of the section is strongly in favor of applying the protection to nonresidents as well as to residents, in that it is provided that the money or benefit shall not be taken to pay the debts or liabilities of "any beneficiary named in the certificate or any person who may have any right thereunder," language broad enough to comprehend all persons, resident or nonresident. It is true that, as a rule, exemption laws have no extraterritorial effect: but it does not necessarily follow that, where property situated in this state is the subject of litigation in our courts, the according of rights or privileges fixed by statute as to such property to any and all litigants, resident, or nonresident, would be given extra territorial effect to such laws

We may say that in the case at bar, if the presumption was necessary, it would do no violence to legal principles to presume that the law of the defendant's residence is the same as the law of this state; there being no showing or claim to the contrary in the record. In this action it is the res which is the gist of the contention, and, in the absence of an express statute making a distinction between residents and nonresidents, it would be the duty of the courts to give to nonresidents the same rights in the subject of the litigation which would be accorded to residents.

In 11 Ruling Case Law, p. 505, it is observed:

"While some courts have taken the position that, where an exemption statute is not expressly made applicable to nonresidents, it will not be given effect in their favor, the better view is that, unless an exemption statute is expressly confined to residents, it applies to nonresidents as well, even though such nonresidents be aliens."

In view of our statutes abolishing the rule of strict construction as to statutes in derogation of the common law and the uniform holdings of this court that exemption laws are to be construed liberally, the latter view would be more in harmony with the genius of our laws and the settled policy of this court. On an investigation of the authorities, we find that the courts of some states, especially where statutes in derogation of the common law are strictly construed, still hold to the strict construction of exemption laws and, on a theory that exemptions are not favored, hold that exemption laws do not protect nonresidents unless they are specifically included in the statute. The great weight of authority is to the contrary. One of the best considered cases expressing the latter view is Bond v. Turner, 33 Or. 551, 54 Pac. 158, 44 L. R. A. 530. Other authorities are as follows: Schwartz v. Birnbaum, 21 Colo. 21, 39 Pac. 416; Mineral Point R. Co. v. Barron, 83 Ill. 365; Wabash Ry. Co. v. Dougan, 142 Ill. 248, 31 N. E. 594, 34 Am. St. Rep. 74; Zimmerman v. Franke, 34 Kan. 650, 9 Pac. 747; Everett v. Herrin, 46 Me. 357, 74 Am. Dec. 455; Himmel v. Eichengreen, 107 Md. 610, 69 Atl. 511; Thompson v. Peterson, 122 Minn. 228, 142 N. W. 307; Borodofski v. Field, 88 Miss. 31, 40 South. 816; State, use of Johnson, v. Knott, 19 Mo. App. 151; Sproul v. McCoy. 26 Ohio St. 577; Wright v. C., B. & Q. Ry. Co., 19 Neb. 175, 27 N. W. 90, 56 Am. Rep. 747; Hill v. Loomis, 6 N. H. 263; Bunn v. Fonda, 2 Code Rep. (N. Y.) 70; Goodwin v.

Claytor, 137 N. C. 224, 49 S. E. 173, 67 L. R. A. 209, 107 Am. St. Rep. 479; Bond v. Turner, 33 Or. 551, 54 Pac. 158, 44 L. R. A. 430; Linsenmayer v. Smythe, 3 Pa. Co. Ct. R. 400; Bell v. Indian Live Stock Co. (Tex.) 11 S. W. 344, 3 L. R. A. 642; Carroll v. First State Bank (Tex.) 148 S. W. 818; Haskell v. Andros, 4 Vt. 609, 24 Am. Dec. 645; Lowe v. Stringham, 14 Wis. 222.

But the plaintiff contends that, even barring the question of residence or nonresidence, under the holdings of the courts the fund can be subjected to the payment of the claim, and cite as a principal authority relied upon Klinckhamer Brewing Co. v. Cassman et al., 12 O. C. D. 141; Id., 21 Ohio Cir. Ct. R. 465. Learned counsel for plaintiff in the brief (no doubt inadvertently) misconstrue and misapply the holding in that case quoting as the law of the case from the language of the sole justice dissenting from the views of the majority. It appears that the case was assigned to and written by Justice Smith, and, in the opinion he gives his view, but expressly says that the other justices have reached a different conclusion, and the case is disposed of in accordance with the opinion of the majority. Catherine Cassman was the beneficiary in a certificate on the life of her husband in the sum of $3,000 issued by the Supreme Lodge, Knights and Ladies of Honor. On the death of the husband, the plaintiff brought action in the nature of a creditor's bill to subject the money due on the policy to the payment of a judgment against Mrs. Cassman in favor of the plaintiff. Mrs. Cassman answered setting up the exempt nature of the property, but afterwards died, and an administrator of her estate was appointed. The controversy continued between the plaintiff and the administrator, it being the claim of the administrator that the money was exempt from application to the payment of the debts of Mrs. Cassman. It appears that, after the service of garnishment on the fraternal order named and during the lifetime of Mrs Cassman, the money was deposited into court. Justice Smith expressed the view that the payment of the money into court was in effect the payment to Mrs. Cassman, and further that the provisions of the statute under consideration (the same being identical with our statute) were intended only to prevent the reaching of the money by legal process during the lifetime of the party insured and that on his death the insurance claim might be subject to attachment or garnishment before its payment to the beneficiary. He states, however,

that the other members of the court hold a different view, and orders the money paid to the administrator, instead of being applied to the creditor's claim, concluding the decision with this language:

"But, in accordance with the holding of the majority, a decree may be entered that the amount of the fund remaining after the payment of the Ottman & Co., and Clements claim be paid to the administrator of the estate of Mrs. Cassman, to be by him administered according to law."

Ottman & Co. and A. C. Clements were parties to the action, Mrs. Cassman having voluntarily assigned to them a portion of the money in consideration of loans advanced by them to her, and their claims were adjudicated and allowed. The opinion of the court as expressed by the majority was directly opposite to the views expressed by Justice Smith, and the syllabus in the case defines the law as found by the majority, so that it will be found that the decision, instead of supporting the contention of plaintiff in this case, sustains the action of the trial court.

In McIntosh v. Aubrey, 185 U. S. 122, 22 Sup. Ct. 561, 46 L. Ed. 834, cited by plaintiff, the Supreme Court of the United States construes the provision in the pension law which reads as follows:

"No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto but shall inure wholly to the benefit of such pensioner." Rev. St. U. S. § 4747 (U. S. Comp. St. 1916, § 9080).

In that case, the high court merely follows the statutory language and holds that the exemption attaches to the fund while the same remains with the pension office or any officer or agent thereof, or is in course of transmission to the pensioner. But the concluding words of the opinion are:

"The pensioner, however, may use the money in any manner for his own benefit and to secure the comfort of his family free from the attacks of creditors and his action in so doing will not be fraud upon them."

We have also examined the following cases cited by plaintiff in error, to wit: Bull v. Case, 165 N. Y. 578, 59 N. E. 301: Recor v. Recor, 142 Mich. 479, 106 N. W. 82. 5 L. R. A. (N. S.) 472, 7 Ann. Cas. 754; Hamilton v. Darley, 266 Ill. 542. 107 N. E. 798. The opinion in each of these cases construes a stat-

ute either identical or similar to the one under consideration in the case at bar. In each case the conclusion is reached that the money cannot be taken until after it is paid over to the beneficiary, thus supporting the trial court in this case, as the money has never reached the hands of Emma R. Collins.

The cases discussed were written with a view to a strict construction of exemption statutes. It is said in the opinion in the New York case that "the law does not favor exemptions." It thus appears that, even in states where the rule of strict construction prevails, the money cannot be taken by legal process until received by the beneficiary. The reasoning in those cases that the money may be reached afterwards is based upon a construction of the expression, "to be paid," used in the statute, and it is held that such phrase is meant to exempt the money only while the same is yet "to be paid." On account of the decision in the New York case, the Legislature of that state amended the law so that there would be no doubt as to the money being exempt even after being paid over to the beneficiary, which fact is persuasive in showing that the original intention of the Legislature and of the people was to attach an exempt character to the money itself whether "to be paid" or actually paid. From a perusal of article 3, c. 38, Revised Laws 1910, containing the law of this state on fraternal insurance associations, it will be discovered that the statute, after authorizing such associations to do business, prescribes at length the method and manner of doing business, the kind of certificates to be issued, the means of assessments and class of beneficiaries, after which the statute exempts "the money or other benefits, charity, relief, or aid to be paid, provided or rendered by such association."

It is our duty to place a reasonable and liberal construction on the section in favor of those intended to be benefited and favorable to the objects and purposes of the statute, and yet it would not be necessarily liberal to say that the expression "to be paid, provided or rendered." is merely descriptive of the benefits which the statute authorized fraternal insurance associations and their members to provide, such benefits not then existing, it being contemplated that they would afterwards be provided for and would inure or accrue in future: and that the expression, being descriptive of the benefits and not of the exemption, does not limit the exemption to any particular time or to any condition not specifically express-

ed in the section. If the Legislature had intended otherwise, it would have been easy to have expressed such intention. Such a construction is, we think, more in consonance with the humanitarian purposes of the exemption law and the liberal policy of this court in construing laws meant to protect the necessitous. The fraternal insurance statute is based upon the theory of mutual moral obligation existing between members of the same family and relatives, and was meant to give an opportunity to provide a fund unhampered by liability to legal process to protect loved ones from want in case of the death of the insured. The creditors of the beneficiary are not in a position to complain. If a son, at his own expense, desires to protect an aged and impecunious parent from want by establishing or providing a fund for such purpose not subject to the importunate demands of creditors, he works no hardship upon such creditors; in fact, he does them a favor, in that, because of the relief given to the debtor, such debtor becomes in a better position to accumulate property and possibly afterwards discharge the debt.

The plaintiff in this case contends that the money ought not to be taken because the mother was not dependent upon the son. There is no evidence to support the contention, and, if there were evidence, the contention would still be untenable. The statute names the class of beneficiaries, the mother of the insured coming under one of the classes named, and the wise purposes of the act would be thwarted if in each individual case the question of dependence of the beneficiary upon the insured could be raised.

The Kansas statute on the subject of fraternal insurance which, in its objects, is akin to our statute has been construed in Emmert v. Schmidt, 65 Kan. 31, 68 Pac. 1072, and it is said by the court:

"Chapter 163, Laws 1895, construed, and held to exempt to the beneficiary named in beneficiary certificates issued by fraternal orders the proceeds of such certificates, while deposited in bank, from the process of garnishment employed by a judgment creditor of the beneficiary to enforce payment of his judgment out of such proceeds."

The California statute exempting the proceeds of insurance policies was construed in Holmes v. Marshall, 145 Cal. 777, 79 Pac. 534, 69 L. R. A. 67, 104 Am. St. Rep. 86, 2 Ann. Cas. 88. It was held that the money was exempt from legal process for debts of the beneficiary even though placed by the

beneficiary in a bank. The court used the following language:

'Appellant contends that, by the deposit of the money in the bank, the money lost its identity, and that thereafter the bank owed Annie J. Jenkins the money; that the debtor thus voluntarily parted with the money, which was exempt, and acquired in lieu thereof a credit due by the bank. Such construction would seem to be unreasonable, and no authority is cited which supports it. It is true that, in one sense, by the deposit the relation of debtor and creditor was created as between the bank and Mrs. Jenkins; but she put the exempt money in the bank. * * * She expected to and did withdraw it as she needed it. The bank did not give her the identical pieces of money that she deposited, but it gave her, as she drew upon it, money equal in value and kind. She was not required to keep the money buried, or in her stocking, in order to have it remain exempt. If the appellant's theory is correct, she could not have paid a $5 grocery bill with a $20 piece, receiving $15 in change, without the risk of having the $15 attached. The law does not require such absurdity."

We have disposed of the main contentions made by the plaintiff in error. There are some technical objections to procedure, however, which we have not yet considered. The plaintiff moved to strike the motion of defendant Emma R. Collins to dissolve the garnishment, and urges that his motion should have been sustained for the reason that section 4831, Revised Laws 1910, provides that:

"The defendant may in all cases, by answer duly verified, to be served within 20 days from the service of the garnishee summons on him, defend the proceedings against any garnishee," etc.

Such section also provides that the defendant may participate in the trial of an issue between the plaintiff and the garnishee for the protection of his interest. In the first place, if it were necessary for the defendant to pursue the method first authorized in the section cited, there is nothing in the record to show when or where service of garnishee summons was had upon the defendant. The sheriff's return shows that he received the summons on the 5th day of June, 1916. He further certifies: "I served the defendant by delivering to each of the defendants a correct and complete copy of the same." The return does not show when and where the garnishment summons was served upon the defendants, if served at all. As to the necessity for verification, we must say that the garnishee had filed a duly verified answer setting up the same state of facts shown in the motion of the defendant. None of the facts stated therein are disputed by the plaintiff, nor were they disputed during the trial. The only question presented to the trial court and to this court is the question of the legal conclusion to draw from such state of facts. We may add that the section quoted authorizes the defendant to participate in the trial between the defendant and the garnishee for the protection of his interest. It is contended that the defendant is not authorized under our practice to file a motion to dissolve garnishment. Our statute on attachment and garnishment is based upon an entirely different theory than that urged by the plaintiff. Garnishment is a species of attachment, and it is so treated by our statute. Section 4862, Revised Laws 1910, reads:

"The defendant may, at any time before judgment upon reasonable notice to the plaintiff move to discharge an attachment, as to the whole or part of the property attached."

And section 4855, Revised Laws 1910, reads:

"If judgment be rendered in the action for the defendant the attachment shall be discharged and the property attached, or its proceeds, shall be returned to him. If the attachment or garnishment shall be discharged on motion prior to final judgment, the defendant may, upon proper supplemental answer, recover his damages, as in other cases for such wrongful attachment or garnishment."

It is the duty of the court to prevent an abuse of its processes; and, when the court's attention is called to the fact that the same are abused, the court has inherent authority to prevent a miscarriage of the law. The plaintiff suffered no prejudice because of any ruling of the court in matters of procedure.

Having carefully considered all of the argument and authorities offered by plaintiff in error, we find no reversible error, and that the garnishment should have been dissolved. The judgment and order of the trial court is therefore affirmed.

By the Court: It is so ordered.