**In the Matter of Richard Clinton PRESTIEN, Bankrupt.**

**No. 75–1821–Civ–BK–JLK–H.**

United States District Court, S. D. Florida.

March 8, 1977.

---

Sandler & Sandler, Miami, Fla., for appellant.

Friedman & Britton, Miami, Fla., for appellee.

## OPINION ON APPEAL

JAMES LAWRENCE KING, District Judge.

This is an appeal from a ruling of Bankruptcy Judge Paul G. Hyman denying certain claimed exemptions. Bankrupt, who had filed a voluntary petition, claimed, in part, that certain disability insurance benefits and certain civil service commissions should be exempt from passing to the trustee in bankruptcy by virtue of Section 70(a) of the Bankruptcy Act. For reasons stated below, this court denies petitioner's exemptions and affirms the ruling of the Bankruptcy Judge.

### 1. THE CLAIMED EXEMPTIONS

Bankrupt filed a voluntary petition in bankruptcy on December 10, 1975. Before January 1975 he had sustained a disability for which he was entitled to receive disability benefits under certain insurance policies then owned. One disability claim was settled for $1,000 per month; in September 1975 bankrupt received $7,000 representing payment for the previous seven months, which sum was deposited in a savings account. The record does not show clearly whether any monthly payments were received after September, but at the time of the petition, bankrupt had apparently made some withdrawals from this account, which then totaled $5,500. Another disability claim was settled for a lump-sum payment of $10,000, which was deposited in a separate account. Finally, bankrupt had received a Civil Service commission amounting to over $700 per month which, in principal part, he had deposited in still another account. Bankrupt claimed as exemptions the sums in the three accounts above, plus other amounts not in controversy here.

In claiming the disability amounts as an exemption, appellant relies upon Fla. Stat. Section 222.18, which states that disability benefits shall not be liable to attachment, garnishment, or legal process in the state. The Civil Service commissions are claimed as exempt under 5 U.S.C. Section 8346, stating that such commissions are "not assignable, either in law or equity, or subject to execution, levy, attachment, garnishment, or other legal process."

In denying the exemptions, the trustee argued that although disability income benefits and civil service commissions are ex-

empt when still *due* a bankrupt, once they are paid to him and deposited in a savings account they lose their exempt character. The Bankruptcy Judge agreed with the trustee's conclusions but assigned different reasons, finding that the bankrupt should be denied exemptions because it appeared bankrupt was a "dishonest debtor."

## II. WHETHER EXEMPT STATUS SURVIVES PAYMENT

### A. *Disability Payment*

Before addressing the question of fraud, the court must consider whether as a matter of law sums exempt from judicial process under state law lose their exempt character after they are paid to and received by the person claiming the exemption. In the case of disability payments the exemption statute, Fla. Stat. Section 222.18 provides:

> Disability income benefits under any policy or contract of life, health, accident or other insurance of whatever form, shall not in any case be liable to attachment, garnishment, or legal process in the state, in favor of any creditor or creditors of the recipient of such disability income benefits, unless such policy or contract of insurance was effected for the benefit of such creditor or creditors.

The statute is thus silent on this exact issue, exempting simply "disability income benefits." "Benefits" could mean either the present right to receive such benefits, as an annuity contract, or benefits after they are paid.

Exemptions for disability benefits are dependent upon specific statutes; before Section 222.18 became law (in 1941), disability benefits were not exempt from judicial levy and would thus pass to the trustee in bankruptcy in situations like the present one. At that time, however, not only those benefits already paid to the estate but also those *not yet paid* would pass to the trustee, so long as the bankrupt's right to receive the benefits had "ripened" (i.e. his disability had occurred) before bankruptcy. This was the holding in *Legg v. St. John*, 296 U.S. 489, 56 S.Ct. 336, 80 L.Ed. 345 (1936). The

present status of annuity contracts in Florida illustrates the impact of the exemption statute for disability benefits. Because annuity contracts are subject to no specific exemption, upon bankruptcy all right to receive future annuities, as well as all payments received in the past, pass to the trustee in bankruptcy. *Cf. In re Power*, 115 F.2d 69 (7th Cir. 1940). Thus it is clear that at least one major purpose of Section 222.18 is to preserve for the bankrupt the *right to receive* future disability benefits. This may be wise because a disabled bankrupt may be unable to return to work after bankruptcy and support himself through future earnings. Future earnings as after-acquired property would not pass to the trustee. Through Section 222.18, therefore, the legislature sought to achieve equality in treatment between future earnings and the disabled bankrupt's only substitute—disability benefits.

Explaining why disability benefits *already paid* should be exempt is a more difficult matter. As long as future payments are reserved to the bankrupt, he is in no danger of destitution in the future. Furthermore, numerous state statutes exempt homesteads and other personalty, so that the bankrupt should not be destitute at the time of filing the petition. *See e.g. Slatcoff v. Dezen*, 76 So.2d 792 (Fla. 1954). Any bankrupt who, as has the instant bankrupt, been able to accumulate prior disability benefits, feeling no financial need to apply them toward the necessities of life, will undoubtedly exempt substantial amounts of personalty.

Furthermore, exemption of disability benefits already paid would place the disabled bankrupt in a favored, rather than an equal position with respect to the non-disabled bankrupt. A bankrupt cannot accumulate wages in a savings account while living on the credit of others, and then expect such accumulated wages to be exempt in bankruptcy. Neither should disabled bankrupt be permitted to accumulate his "wages", i.e. his disability payments, refusing to apply them toward his normal

expenses, and thereafter expecting them to be exempt.

Finally, allowing sums already paid to remain exempt creates a host of problems without any evident legislative solutions. When do the funds cease to become exempt? In the old decision of *Hathorn v. Robinson*, 96 Me. 33, 51 A. 236 (1901) the court, finding itself confronted with such a problem, remarked:

> If the effect of this statute is to continue the exemption after the money has come into the possession of the beneficiary, such exemption might perhaps be claimed to follow the money, so long as its identity was preserved, in investments and in the purchase of property not otherwise exempt from attachment. As to this we, of course, do not intend to express an opinion; we refer to it merely to show that the consequences of such a continuing exemption are too important, and the questions involved in such a construction are too serious to permit us to give an effect to this statute far beyond that which would naturally follow from the ordinary meaning of the words used.

It may be argued that denial of exempt status to funds already paid works hardship on those disability beneficiaries who have chosen lump-sum settlements in place of periodic annuity payments. If the lump-sum settlement is placed in an interest-bearing account, the situation of that bankrupt, it is argued, is virtually indistinguishable from that of the bankrupt choosing periodic payments. Why, then, should the entire lump-sum principal, not just the accrued interest, pass to the trustee?

■ Whereas hardship may indeed befall lump-sum beneficiaries, the court finds a valid distinction between these beneficiaries and those receiving periodic payments which supports the court's holding. In fact, when lump-sum disability settlements are paid to a beneficiary, that beneficiary thereafter has sole control over the total amount of the settlement. He can invest in property, exempt or otherwise, or he can pay his creditors and avoid bankruptcy altogether. The beneficiary of a periodic payment does not have control over future payments, much as a wage earner does not have control over, nor may he spend, future unpaid wages. Lump-sum beneficiaries enjoy the immediate benefit of disposition of their lump-sum. In return for this benefit, they must risk losing their lump-sum if they choose to segregate it from their creditors and thereby precipitate bankruptcy. In view of the foregoing, the court concludes that Section 222.18 exempts only those disability benefits that have not been paid to beneficiaries.

In reaching this conclusion, the court is unpersuaded by any authority cited by bankrupt. *Orange Brevard Plumbing and Heating Co. v. La Croix*, 137 So.2d 201 (Fla. 1962), stands for the proposition that funds from the *sale* of an exempt homestead retain their exempt character if the bankrupt intends immediately to reinvest them in another homestead. *Id.* at 206. *Orange Brevard* is inapposite to the present case, but if it suggests anything, it is that it is the homestead *as such* that is exempt; proceeds from the sale would not be exempt if they were deposited in savings accounts with no intention to reinvest, regardless of whether the accounts were segregated.

*Bank of Greenwood v. Rawls*, 117 Fla. 381, 158 So. 173 (1934) is somewhat closer to the present case. There, an insolvent debtor transferred an amount to his wife that he had received as a disability benefit. The question was whether the transfer was fraudulent against his other creditors. The court concluded it was not, primarily because it appeared that the disability settlement was obtained in exchange for the surrender of the insolvent's life insurance policy in which his wife had been named as a beneficiary, and that the transfer of the disability benefit merely restored to the wife what she had previously been due but then subsequently cut off from by the surrender of the policy. *Rawls* may also be read as holding that the disability payment was exempt because it represented a cash surrender value of a life insurance policy, as it was paid in connection with the surrender of such a policy. In this light, *Rawls* seems

to hold that payments on the cash surrender value of a life insurance policy retain their exempt character even after payment to the beneficiary before bankruptcy. This court believes that such an interpretation of *Rawls* makes unclear precedent into bad law, and because *Rawls* is not controlling here, the court declines the invitation to treat that decision as persuasive.

Other jurisdictions have reached various results on issues such as this one, but most are unimportant because the results depend upon the specific statutes in those jurisdictions. *State ex. rel. Lankford v. Collins,* 70 Okl. 323, 174 P. 568 (1918), however, construed a state statute exempting pension funds "to be paid" to a beneficiary as applying equally to funds already paid. As the statute in *Lankford* appears to be even more consistent with this court's result in the instant case than is Section 222.18, *Lankford* must be viewed as authority *contra,* which this court refuses to follow. A statute substantially similar to that in *Lankford* was construed in opposition to that holding in *Bull v. Case,* 165 N.Y. 578, 59 N.E. 301 (1901).

In *First Nat'l Bank v. How,* 65 Minn. 187, 67 N.W. 994 (1896), the court expressed sentiments that may be superficially appealing:

To interpret the statute so as to exempt the fund only while it is in the hands of the association would defeat the purpose of the law, and justly expose the legislature to the charge of paltering with the beneficiary in a double sense. What benefit is it to an unfortunate widow to be mockingly told that the money provided by her husband for her support is exempt from execution so long as it remains in the hands of the insurance company, where it can do her no possible good, but, when she reaches out her hand to take the money, her creditors may wrest it from her grasp. Such is not the meaning of the statute. It exempts the money from execution in the hands of the beneficiary.

However, the reasoning in *How* is inapplicable to the bankruptcy case, for once dis-

ability funds are ruled exempt as not yet paid to the beneficiary at the time of bankruptcy, the trustee can no longer attempt to collect these funds. This is because Section 70(a) of the Bankruptcy Act gives the trustee the power of an ideal judicial lien creditor *as of the moment of bankruptcy.* For decisions *contra How,* see *e.g. Martin v. Martin,* 187 Ill. 200, 58 N.E. 230 (1900), *Recor v. Commercial & Sav. Bank,* 142 Mich. 479, 106 N.W. 82 (1905).

### B.   Civil Service Commissions

The bankrupt also claims as an exemption sums in a segregated savings account representing deposited monthly payments of a civil service commission. 5 U.S.C. Section 8346 provides that monthly payments made as civil service commissions or retirement pensions are "not . . . subject to execution [or] levy". The court has discovered no authority to indicate that this exemption statute is to be construed any differently from the state statute earlier discussed. Section 8346 evidently applies to *prospective* payments and seeks to protect he who earned the right to such payments from being deprived of his future income through bankruptcy or other judicial action. In fact, the statute also provides that such funds are "not assignable, either in law or in equity". Of course, once a commission is *paid* it is meaningless to speak of a restraint on *assignment* because the money is already in the hands of the beneficiary.

*In re Estate of McGreevy,* 445 Pa. 318, 286 A.2d 355 (1971) seems clearly to hold that federal statutory exemptions for civil service commissions "do not apply to money *after it has passed into the hands of the beneficiary.*" 286 A.2d at 356. (emphasis in original). In accord are decisions based on previous federal exemption statutes. For example, *McIntosh v. Aubrey,* 185 U.S. 122, 22 S.Ct. 561, 46 L.Ed.2d 834 (1902) settled the law that a previous federal statute exempting "money due, or to become due, to any pensioner" does not exempt money already paid to the pensioner, but operates only to foreclose levy on his future payments. Accordingly the court concludes

that Section 8346 exempts only future pension amounts and not those already paid and accumulated.

## IV. WHETHER THE BANKRUPT'S ACTIONS WERE FRAUDULENT

As indicated above, the Bankruptcy Judge in this case did not reach the issue of whether disability benefits and civil service commissions lose their exempt character when actually paid, which issue this court has resolved in the foregoing. The Bankruptcy Judge denied the bankrupt's claimed exemptions on the grounds that the bankrupt, in segregating the disability benefits and civil service commissions while accumulating substantial debts, had engaged in a fraudulent scheme to defeat his creditors.

In so ruling, the Bankruptcy Judge placed great weight on certain conduct of the bankrupt just prior to the filing of the petition. The record shows that in March of 1975, after sustaining his disability but before filing the voluntary petition, the bankrupt began an extended trip through Europe, "for relaxation", during which he incurred over $25,000 in debts to American Express, Master Charge, Bank Americard, and a Greek department store. During the time these debts accumulated, the bankrupt permitted his disability insurance stipends and civil service monies to continue to accumulate in segregated savings accounts, making no attempt to employ these funds to offset even day-to-day expenses for necessities. At the time of the petition, the creditors who had financed the bankrupt's European holiday remained unpaid, and bankrupt's savings accounts remained untouched. This, according to the Bankruptcy Judge, was "part of a premeditated and deliberate plan to resort to bankruptcy and to stand behind the exemption laws to defeat the claims of [his] creditors." Thus the Bankruptcy Judge concluded that the bankrupt "[was] not an honest debtor but a dishonest one and put into effect his plan to defraud his creditors." This court affirms the Bankruptcy Judge's conclusions in this regard as an alternate ground for its holding.

It has been held without exception in Florida that "the exemption laws were designed for the honest debtor," *Slatcoff v. Dezen*, 76 So.2d 792 (Fla. 1954), and that they "should not be applied as to become an instrument of fraud upon creditors." *Id.*, citing *Pasco v. Harley*, 73 Fla. 819, 75 So. 30 (1917). *Accord, Jetton Lumber Co. v. Hall*, 67 Fla. 61, 64 So. 440 (1914), *In re White*, 221 F.Supp. 64 (N.D. Cal. 1963), *In re Martin*, 217 F.Supp. 937 (D. Ore. 1963), *In re David*, 54 F.2d 140 (S.D. Fla. 1931).

Here the Bankruptcy Judge, who as a trial judge is permitted to pass upon the credibility of witnesses and to determine matters of fact, concluded that the bankrupt had been dishonest in his attempt to preserve his exemptions. If there is some evidence in the record to sustain this, the Bankruptcy Judge's opinion must be affirmed.

Although nowhere in the record has the bankrupt admitted his prior intention to segregate his disability benefits and then to deliberately resort to bankruptcy, his intention may be presumed from his acts. Why would the bankrupt attempt to save all disability benefits and commissions—benefits intended to offset day-to-day living expenses—and simultaneously to have both his tour *and* his benefits? In the bankrupt's overt acts alone is sufficient presumptive evidence of fraud.

In view of the foregoing, it is

ORDERED and ADJUDGED that the Findings and Conclusions of the Bankruptcy Judge are in all manner affirmed. Title to all sums on deposit at the time of bankruptcy passed to the trustee in bankruptcy at that time. In addition, the bankrupt shall account for any withdrawals made from the accounts in question after the date of bankruptcy.