**In re Henry GHERMAN, First Financial Planning Corporation of South Florida, Inc., Financial & Investment Planning, Inc. (AKA) Fip, Inc. Debtors.**

**Bankruptcy No. 88–03266–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

May 23, 1989.

---

John W. Kozyak, Miami, Fla., Ronald R. Peterson, Jenner & Block, Chicago, Ill., for Chapter 11 trustee.

Schantz, Schatzman, Aaronson & Berlin, P.A., Miami, Fla., for Chapter 11 Creditors' Committee.

Kelley Drye & Warren, Smathers & Thompson, Joel M. Aresty, Miami, Fla., for debtors Henry Gherman and FIP.

## ORDER ON OBJECTIONS TO EXEMPTIONS

THOMAS C. BRITTON, Chief Judge.

The trustee's objection (CP 296, 300) to exemptions claimed by the debtor, Gherman, were scheduled to be heard April 14. The parties stipulated for the submission of that issue, without a hearing or trial, upon a record consisting of the entire record submitted in Adversary Proceedings 88–0581 (the Gherman discharge and family litigation) and 89–0069 (the sums paid to Ramsey Clark), and the April 19, 1989 deposition of the trustee's expert witness, D.J. Goldstrich, and upon memos (CP 329, 331a and 347) subsequently submitted by the parties. (CP 307 and 333 at pp. 3–6).

I have reviewed that record and the memos and now sustain the trustee's objections.

The challenged exemptions are Gherman's claimed homestead (beneficial life estate in a single family residence at 3342 N.E. 171st Street, North Miami Beach, Florida, with an asserted value of $750,000) and Gherman's claim of an Erisa pension, with an asserted value of $1.756 million (consisting of $1.5 million in the Pruden-tial–Bache Chaska account for Gherman as trustee, a mortgage receivable of $186,000 on his former residence and $70,000 worth of Israel Bonds in the FIP Pension Plan). (CP 296).[1]

In Adversary Proceeding 88–0581 (the Gherman discharge and family litigation), Gherman raised as an affirmative defense, the exemption claims which are in issue here. In that litigation, I found that the trustee has traced funds fraudulently converted by Gherman to the entire funding of the property claimed as exempt. Upon that basis, this court rejected the affirmative defense and denied the asserted exemption. (CP 137, memorandum decision, CP 153, judgment). I agree with the trustee that Gherman is now collaterally estopped to litigate again the asserted exemptions at issue here. *In re Held*, 734 F.2d 628, 629 (11th Cir.1984).

Notwithstanding that fact, I have considered each of Gherman's contentions made on this occasion, and again reach the same conclusion. I find that all of the funds used to acquire the property claimed as exempt (both the home and the asserted pension) were fraudulently and unlawfully stolen by Gherman. It is well-settled in this State that:

"[although the Florida] homestead exemptions should be liberally construed in the interest of the family home, *they should not be applied so as to make them an instrument of fraud or imposition upon creditors.*" *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127, 130 (1925) (bankruptcy trustee's imposition of equitable lien against defendant's home upon ground it was improved with embezzled funds upheld by Florida Supreme Court as against defendant's assertion of his homestead exemption); *In re Prestien*, 427 F.Supp. 1003, 1008 (S.D.Fla. 1977) (denial of bankrupt's claimed exemptions by bankruptcy court, Hyman, J., upon ground bankrupt had engaged in a fraudulent scheme to defeat his credi-

---

1. A Supplement to Objections (CP 300) was filed two weeks later, but made no additional objection. It merely summarized the trustee's grounds for his objections. Those grounds are amplified in the trustee's memorandum (CP 331a).

tors affirmed by District Court, King, J.).[2]

I also agree with the trustee that Gherman abandoned his homestead when he secretly departed Miami on August 8, 1988 with suitcases containing $4.4 million in embezzled funds in $100 bills, fleeing those he had swindled, and headed for a country with no extradition treaty. It is difficult to imagine clearer circumstantial evidence of an intent to abandon his home in Miami. Gherman's present willingness to resume residence in his former home, in preference to serving a 30–year prison sentence, though both understandable and completely plausible, does nothing to negate his intent of August 8 to abandon permanently his home in Miami.[3]

I agree with Gherman that he is entitled to the effect of *Fla.Stat.* § 222.21(2)(a) (which became effective October 1, 1987) and which provides for the exemption of Erisa retirement plans "qualified under [applicable provisions] of the Internal Revenue Code" from all claims of creditors of the beneficiary).[4] However, I agree with the trustee that Gherman is not (nor was he on the date of this bankruptcy) the beneficiary of a qualified Erisa plan.

To mention just one point, as the trustee has pointed out, the res (the trust assets) of the Erisa plan at issue here had been diverted and converted to other purposes and an unfunded trust cannot shield non-trust assets from the claims of creditors.

If, however, this recent Florida statutory exemption from creditors' claims shields the funds claimed by Gherman, those funds were funds he fraudulently converted and embezzled, and I agree with the trustee that both Florida and federal law prevent a debtor from using *any* exemption as an instrument of fraud.

I have not overlooked Gherman's argument that denial of his exemptions denies him the right to counsel. This argument is unpersuasive for three reasons: As this court has already said, it is persuaded that Gherman has yet to account for or return all of the funds he stole. Gherman has had the benefit of counsel in the criminal court; he has no organic right to counsel at public expense in this civil court; even if he did, it does not follow that forfeited or invalid exemption claims must be allowed him so he can employ counsel.

Gherman has also argued that he legitimately earned fees in his management of his clients' affairs. This court has already held that when Gherman embezzled his clients' funds, he forfeited any right to compensation.

He has also argued that the denial of his discharge is the *only* appropriate sanction for Gherman's criminal activity and other wrongdoing and that denial of his exemption claims would constitute double punishment. This argument, like his others, is contrary to all precedent. If it were valid, it would follow that any debtor convicted of a crime and sentenced to jail would, by virtue of that fact alone and as a matter of law, be entitled to a bankruptcy discharge and all exemptions he claims.

DONE and ORDERED.

---

**2.** "The exemption laws were designed for the honest debtor ... and should not be applied as to become an instrument of fraud upon creditors." *Pasco v. Harley,* 73 Fla. 819, 75 So. 30 (1917); *Slatcoff v. Dezen,* 76 So.2d 792 (Fla. 1954); *Ryskind v. Robinson,* 302 So.2d 427, 428 (Fla.Dist.Ct.App.1974); *cf. Matter of Reed,* 700 F.2d 986, 989–91 n. 2 (5th Cir.1983) (scheme to maximize exempt property but exemptions not challenged).

**3.** Mrs. Gherman, who is not in bankruptcy, has claimed no homestead exemption. Her entitlement to a homestead exemption is not at issue today before this court.

**4.** This statute was intended to and has the effect of superseding *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir.1985).