[No. 11272. Department One. March 28, 1914.]

MARIE REIFF, *Respondent*, v. ARMOUR & COMPANY, *Appellant*.[1]

EXEMPTIONS — PROCEEDS OF LIFE INSURANCE — AFTER INCURRED DEBTS. Under Rem. & Bal. Code, § 569, providing that the proceeds or avails of all life or accident insurance shall be exempt from all liability for any debts, property acquired out of the proceeds and avails of a life insurance policy is not exempt from the after-incurred debts of the beneficiary; the exemptions extending only to the debts of the insured and of the beneficiary existing at the time the policy is made available for his use.

Appeal from a judgment of the superior court for Spokane county, Yakey, J., entered January 2, 1913, upon findings in favor of the plaintiff, in an action to quiet title. Reversed.

*Tolman & King*, for appellant.

*Merritt, Oswald & Merritt*, for respondent.

CHADWICK, J.—Plaintiff and one Hansen were copartners in a butcher business, and as such had established a credit with defendant and others. Defaulting in their payments, defendant, for itself and as the assignee of others, took a judgment against the firm of Reiff & Hansen. At and prior to the time the debts were incurred, plaintiff owned certain real property in the city of Spokane. This property was carried into the property statements of the firm by Hansen, who attended to the details of the business, and it is not denied that it was an inducing cause for the credit. The judgment appearing as an apparent lien against the property, plaintiff brought this action to remove the cloud and to quiet her title. The court found that the property had been purchased out of the proceeds and avails of a policy of insurance upon the life of the deceased husband of plaintiff, and that, under Rem. & Bal. Code, § 569 (P. C. 81 § 881),

[1]Reported in 139 Pac. 633.

which provides that "the proceeds or avails of all life or accident insurance shall be exempt from all liability for any debts," the judgment could not operate as a lien upon the property, and a decree was accordingly entered discharging and removing the cloud.

The case may be disposed of by answering the question, Is property acquired out of the proceeds and avails of a life insurance policy exempt from the after incurred debts of the beneficiary?

It was the theory of the trial judge, and it is the contention of counsel for respondent, that the statute exempts the property from *any* liability for *any* debt; that these words must be taken without qualification, and when so taken, the property cannot be made to answer for any debt, although it may have been incurred by the debtor upon the faith and credit of the property itself.

Our first impression was that this reasoning might be sound; but upon more mature reflection, we are of the opinion that the decree cannot be sustained. The statute above quoted was passed at the session of 1895. The title of the act is, "An act exempting the proceeds of life insurance from liability for debt and declaring an emergency." Sec. 2 provides, "there being no adequate law now in force exempting the proceeds of life insurance, an emergency is hereby declared to exist and this act shall take effect immediately." At the time the act was passed, the financial condition of the people of this state was such that a number of laws tending to broaden the privilege of exemption were passed. The law with reference to the exemption of the proceeds of life insurance had not been settled in this state by the legislature or by the courts. In the absence of legislation, some courts had held that such proceeds passed to the beneficiary exempt from the debts of the assured; but the general rule was that there was no exemption of insurance monies, as against the claims of creditors. Here was a mischief which the legislature sought to remedy, and in so doing it passed

a statute, general in its terms. The act operated upon property in which the beneficiary had no interest until the death of the assured, nor could the words "proceeds or avails" as there used, have reference to any liability or any debt not in existence at the time the interest of the beneficiary ceased to be contingent and became actual. There can be no debt until it is incurred, and there is nothing in the act to indicate that it is prospective or that it was the intention of the legislature to create a favored class, or give to him who had received a bounty a greater protection or a greater reward than one who had accumulated his property by hard work, self sacrifice and self denial.

In the case of *Flood v. Libby*, 38 Wash. 366, 80 Pac. 533, 107 Am. St. 851, the court held the proceeds of an endowment policy were exempt from the prior debts of the assured person. If we should follow the conclusion of the lower court in this case, we might have this result: A person might have two policies, one an endowment policy and the other a straight life policy. If the endowment policy matured a day before the death of the assured and he collected the money and gave it to the one who was named as a beneficiary in the other policy, that money would be subject to execution for subsequent debts, but the money collected on the straight life policy would not be. We will not presume that the legislature intended any such absurd result.

We are in accord with the holding of the New York court of appeals in the case of *Bull v. Case*, 165 N. Y. 578, 59 N. E. 301:

"There is no limit upon the number of such policies or certificates which a man may hold. A member's family may at his death receive an aggregate sum amounting to a comfortable fortune and yet, if appellant's contention is sustained, escape the payment of just obligations created upon the promise to pay out of this very fund. While such exemptions might be favored to a limited extent for reasons which we need not now discuss, it is obvious that no principle of public policy can justify unlimited exemptions of

such moneys, and nothing but the explicit and unqualified fiat of the legislature would warrant the courts in going to that extent."

There is certainly no public policy in this state that would sustain the construction put upon the act by the lower court, and we find no fiat of the legislature, either explicit or by way of construction, that would warrant us in holding to a rule that would give the beneficiary of an insurance policy a letter of marque to go out and commit acts of piracy on the high seas of trade and commerce. We think the intent of the law is to exempt the proceeds and avails of an insurance policy from the debts of the assured, and from the debts of the beneficiary existing at the time the policy is made available for his use. This statute has been before the court in two cases, *Flood v. Libby, supra,* and *Northwestern Mut. Life Ins. Co. v. Chehalis County Bank,* 65 Wash. 374, 118 Pac. 326, but in each of those cases the debt was contracted prior to the maturing of the policy.

Respondent relies upon the case of *Cook v. Allee,* 119 Iowa 226, 93 N. W. 93. There the statute was more specific than our own. It provided that the avails of all policies of life or accident insurance payable to the surviving widow shall be exempt from liability of all debts of such beneficiary contracted prior to the death of the assured. The beneficiary took a part of the proceeds of the policy and bought a piece of real property. It was sought to subject this property to the lien of a judgment taken upon a debt of the beneficiary existing at the time of the death of the assured. The only question before the court was whether the exempt character of the property was maintained only while the proceeds and avails were in the coin or currency actually tendered in payment of the policy; it being contended that, when once grasped *in manus,* it lost its character as such. It was very properly held that the statute could be given no such restricted meaning, for to so hold would defeat the very

object, as well as violate the letter, of the statute there under consideration.

The case of *Clark v. Lynch,* 31 N. Y. Supp. 1038, is submitted as one presenting identical questions with the case at bar. From a casual reading of that case, it would seem that it might be so, but reference to the statute cited in the opinion will show that it was expressly provided that the exemption from execution process of the beneficiary fund of any society organized for the assistance and support of its members was extended by the act of 1884 (since repealed) so that the money was made exempt from execution for the debts of the beneficiary. This is the view of that case entertained by the court of appeals in *Bull v. Case, supra,* the court saying that it was under this explicit declaration that the case was decided. Many expressions contained in the latter opinion convinces us that, were the question an open one, the court of appeals would have come to a different conclusion.

There is another consideration that has moved us to our conclusion; that is, the legislature has been careful to provide for exemptions of real and personal property. It has provided for homestead exemptions and in many ways voiced the humane impulses of our people, and it would seem that we have carried the statute as far as it can in reason be extended when we hold that the law will give to a beneficiary the proceeds and avails of an insurance policy free and clear of all debt, whether incurred by the assured or by himself, and out of which, if he so wills, he may further claim a homestead or other exemptions given him by statute. To hold otherwise would be to say that the legislature must have presumed that the beneficiaries of all insurance policies are presumptively not *sui juris* and are to be made the favorites of the law. The theory upon which insurance moneys are exempted from the claims of creditors has been always, so far as we are informed, that the creditor can claim no equity in a fund that had been in no way used as a basis for the credit. That rule of construction can have no possible

application to the facts in this and similar cases, when we stop to consider that the legislature has made no limit to the exemption and there is no limit to the amount of insurance that may be written on the life of a man. A man with a hundred thousand dollars or a million dollars, proceeds of an insurance policy, might go into any community, set up a business, refer to his deposit of money in a bank and obtain credit on the faith of it, confiscate the goods of another by fake statement, or silent circumspection, and claim immunity under the law. Such a rule would not square with reason. To state it is to refute it, and no court should announce it as a superrefined product of judicial construction.

This case is, in a sense, *sui generis*. In our judgment, it needs no sustaining authority. It may be that there are no apt cases. Counsel for respondent say: "Cases from other courts are of little, if any, aid here. The statute at bar is entirely dissimilar to statutes of other states on the subject." Common sense and reason are the best guides in the construction of statutes. But if we had to resort to authority, the cases construing the pension money statutes would afford us some support in the way of remote analogies, although the court of appeals in New York was of different mind in the case of *Bull v. Case, supra*. We shall not review those cases, but the subject may be pursued by those who may be interested in it by reference to the authorities collected in 18 Cyc. 1440, 1441, and *Recor v. Recor*, 5 L. R. A. (N. S.) 472.

The judgment of the lower court is reversed and remanded with instructions to dismiss.

CROW, C. J., ELLIS, and MAIN, JJ., concur.