[No. 57773-1.    En Banc.    December 19, 1991.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
IN
FEMINIST WOMEN'S HEALTH CENTER, ET AL, *Plaintiffs*,
v. SHARON CODISPOTI, ET AL, *Defendants*.

*William J. Bender, Kenneth C. Weil,* and *Skellenger, Bender, Mathias & Bender, P.S.,* for plaintiffs.

*Ronald E. McKinstry, Ronald T. Schaps, Brian D. Zeringer,* and *Bogle & Gates; Carmen K. Bullard,* for defendants.

ANDERSEN, J. —

FACTS OF CASE

This case is before us on a question certified to us by a federal court.

Pursuant to the Federal Court Local Law Certificate Procedure Act, RCW 2.60, and the rules of this court, the United States District Court for the Western District of Washington certified the following question of state law to this court:

> Under R.C.W. 48.18.410(1), does a defendant's liability on a debt arising from an alleged violation of the Racketeer Influenced and Corrupt Organizations Act exist (1) at the time the alleged violation occurs, or (b) at the time judgment is entered against the defendant for violation of the Racketeer Influenced and Corrupt Organizations Act?

Although the federal court provided a detailed set of facts and the parties have offered to provide additional ones, the facts necessary for resolution of this narrow question are quite elemental and are in the record presented. A chronological time line is perhaps the clearest method to describe these relevant facts.

Between August 1983 and April 1984 certain events occurred[1] which ultimately gave rise to a civil judgment[2]

---

[1] It is not entirely clear from the jury verdict in the federal case what specific acts were performed by Ms. Codispoti which gave rise to liability to the health center. However, it is unnecessary for this court to inquire further since the only facts relevant to the insurance exemption issue presented here are the date of the federal judgment, the time of the events giving rise to the liability and the date the life insurance proceeds were received by the beneficiary.

[2] The underlying judgment which creditors are seeking to satisfy is a civil judgment obtained under the civil remedies section of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964. Whether or not the use of civil RICO remedies against antiabortion activists is a proper utilization of that statute is a hotly debated issue. Yonover, *Fighting Fire with Fire: Civil RICO and Anti-Abortion Activists*, 12 Women's Rights L. Rep. 153 (1990-1991); Note, *Using Civil RICO to Battle Anti-Abortion Violence: Is the Last Weapon in the Arsenal a Sword of Damocles?*, 25 New Eng. L. Rev. 1363 (1990-1991). However, that issue is not before this court, though it apparently is before the Ninth Circuit Court of Appeals of the United States in an appeal from the federal action. The question certified to this court does not in any way concern the merits of the federal case. We note only that the character of the RICO action is civil and not criminal in nature. The question before this court relates *only* to the scope of this state's life insurance proceeds exemption statute.

against Sharon Codispoti[3] in favor of the Feminist Women's Health Center.

In February 1986, the health center served a complaint on Sharon Codispoti and her then husband, Carl Codispoti.

In May 1988, Sharon and Carl Codispoti were divorced.

In January 1989, Carl Codispoti died in an automobile accident. The estate of Carl Codispoti was substituted as a defendant in the federal civil case.

In May 1989, Sharon Codispoti received $205,726.04 as the named beneficiary of her former husband's life insurance policy.

In July 1989, trial in the federal court civil RICO action commenced.

In August 1989, the trial concluded with a jury verdict against Sharon Codispoti but in favor of the estate of Carl Codispoti. Hereafter, Ms. Codispoti will be referred to as the debtor or the judgment debtor and the health care center will be referred to as the creditor or the judgment creditor.

In September 1990, the judgment creditor filed a motion for writ of execution on the judgment debtor's bank account containing the proceeds of the life insurance policy. The debtor then moved to certify to this court the legal issue regarding the applicability of Washington's life insurance exemption proceeds statute[4] to the proceeds of the life insurance policy. The Federal District Court granted that motion and certified the above question to this court.

The statute at issue in this case is the life insurance proceeds exemption statute, RCW 48.18.410 (henceforth the Act), which provides in relevant part:

(1) The lawful beneficiary . . . of a life insurance policy . . . shall be entitled to the proceeds and avails of the policy against the creditors . . . of the insured . . . and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, existing at the time the proceeds or avails are made available for his own use.

---

[3]Sharon Codispoti has remarried and is now known as Sharon Codispoti Jurkovich.

[4]RCW 48.18.410.

The narrow legal question presented here is whether, in the context of this statute, a "liability for any debt" exists at the time the acts giving rise to the liability occur or later, when the claim is reduced to judgment. If the liability on the debt was created at the time the events giving rise to the liability occurred, then these life insurance proceeds are exempt under our state insurance exemption statute. However, if the liability on the debt does not exist until a judgment is rendered, then these proceeds would not be exempt because the proceeds were made available to the life insurance policy beneficiary before the judgment against her was rendered.

■ At the heart of this exemption issue is the definition which should be applied to the word "debt" as used in the Act. When used in a statute, the word "debt" has no one fixed meaning and may vary according to the context in which it is used.[5]

Debt has been given a very narrow meaning in some contexts. For example, under the debt limitation provision of article 8 of the Washington Constitution, "debt" means only certain borrowed money.[6] However, under other circumstances the concept of "debt" is given a very broad reading. For instance, "debt" is defined in the Uniform Fraudulent Transfer Act,[7] as a liability on a claim and a claim means a right to payment whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.[8] This broad definition of debt serves to protect *creditors* from fraudulent conveyances. Similarly, the

---

[5] *Caplan v. Sullivan,* 37 Wn. App. 289, 292, 679 P.2d 949 (1984); *Community Property — Antenuptial Debts — Eliminating Immunity of Earnings and Accumulations of Debtor Spouse,* 45 Wash. L. Rev. 191, 194 (1970).

[6] *Department of Ecology v. State Fin. Comm.,* 116 Wn.2d 246, 254, 804 P.2d 1241 (1991).

[7] RCW 19.40.011(3), (5).

[8] *See also* Uniform Fraudulent Conveyance Act, former RCW 19.40.010.

federal bankruptcy code defines "debt" as a liability on a claim,[9] and a claim as a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. § 101(4). Conversely, this broad definition of "debt" serves to protect the *debtor* seeking bankruptcy.

It follows from the foregoing that the proper definition of the concept of "debt" will depend upon the intent and purpose of the statute in which the word is used.

The creditors in the instant case rely heavily on *Caplan v. Sullivan*, 37 Wn. App. 289, 679 P.2d 949 (1984). The issue in *Caplan* was whether, under RCW 26.16.200, a tortfeasor's community property earnings were subject to garnishment for a tort committed prior to marriage. In order to give a liberal construction *to the exemption* in the "marital bankruptcy statute", our Court of Appeals defined debt to mean only an obligation arising from contract or a sum of money owed which is fixed and certain.[10] The Court of Appeals reasoned that the Legislature intended the earnings and accumulations of a spouse be available to creditors only for the spouse's fixed and certain obligations and not for contingent obligations or claims for unliquidated damages.[11] Therefore, although the court in *Caplan* did say that an unliquidated tort claim was not a debt within the meaning of that statute, it did so in order to *protect the debtor* from the creditor.[12]

---

[9]11 U.S.C. § 101(11).

[10]*Caplan*, 37 Wn. App. at 292-93.

[11]*Caplan*, 37 Wn. App. at 293.

[12]The correctness of the *Caplan* decision is not before this court in this case.

■ To use such a narrow definition of "debt" in the present case would have an effect opposite that in *Caplan*, since if the liability for the debt existed prior to this debtor receiving the life insurance proceeds, those proceeds will be deemed to be exempt property. Otherwise, if the debt did not "exist" until judgment was rendered, the life insurance proceeds will not be exempt because the debt would have been incurred after the proceeds were in the hands of the beneficiary/debtor. In *Caplan*, the word "debt" was narrowly construed in the context of an *exception to an exemption*; in the present case the word "debt" must be construed in the context of the *grant of the exemption* which is normally accorded a liberal construction.

■ Since the term "liability for any debt" is not defined in the insurance proceeds exemption statute, it is presumed that it is to be accorded its ordinary meaning.[13] Debt is defined as including (1) a neglect or violation of duty; (2) a state of owing; and (3) something owed by one person to another; something that one person is bound to pay to another or perform for his benefit. *Webster's Third New International Dictionary* 583 (1986). These definitions are not particularly helpful because depending on which of these various definitions is utilized, the arguments of each of these opposing parties can be supported.

Therefore, in order to determine the meaning of "debt" within the context of the life insurance exemption proceeds statute, it is useful to consider the construction this Act is usually accorded, the purpose behind the Act and the history of the Act.

■ Virtually all states have some form of exemption statute which applies to life insurance proceeds.[14] Those statutes vary widely as to the class of beneficiary pro-

---

[13]*American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991); *North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 320-21, 759 P.2d 405 (1988).

[14]S. Schwarzschild, *Rights of Creditors in Life Insurance Policies* 277-351 (1963).

tected, the amount of proceeds protected from creditors, and in whether the proceeds are protected from creditors of only the insured or from both the insured's and the beneficiary's creditors. Washington's statute is very liberal in protecting all classes of beneficiaries, all proceeds (including cash values), and in exempting the proceeds from both the insured's and the beneficiary's creditors.[15] Life insurance proceeds exemption statutes in general, and Washington's in particular, have been afforded a very liberal construction so as to achieve their purposes.[16]

The purpose of the life insurance exemption statute is to secure, after the death of the insured, pecuniary assistance to the beneficiary who is usually someone who was dependent upon the insured for support.[17] Essentially what is often referred to as an "exemption" is actually more in the nature of a "preference" given to the beneficiary over the creditors.[18]

One writer explains that life insurance is the best means which average individuals have for providing economic income to their families after their death. Often, life insurance is the only means by which the average family can be supported in the event of the untimely death of a breadwinner, and therefore it is appropriate that such insurance be protected from creditors.[19] This court has long recognized that life insurance is fundamentally different from other

---

[15]RCW 48.18.410; S. Schwarzschild, at 184, 187, 196, 198-99.

[16]*In re Elliott*, 74 Wn.2d 600, 620, 446 P.2d 347 (1968); *Northern Sav. & Loan Ass'n v. Kneisley*, 193 Wash. 372, 378, 387, 76 P.2d 297 (1938); *Holden v. Stratton*, 198 U.S. 202, 210, 49 L. Ed. 1018, 25 S. Ct. 656 (1905); S. Schwarzschild, at 200; 5 G. Couch, *Insurance* § 29:118, at 425 (2d ed. 1984).

[17]*Elliott*, 74 Wn.2d at 621; 2A J. & J. Appleman, *Insurance* § 1341, at 567 (1966); *Aetna Life Ins. Co. v. Bunt*, 110 Wn.2d 368, 377-78, 754 P.2d 993 (1988).

[18]*Elliott*, 74 Wn.2d at 621; G. Couch, at 426 n.6.

[19]S. Schwarzschild, at 259, 273.

classes of property and that exemptions for life insurance may reasonably be allowed to a greater extent than other exemptions.[20] As the United States Supreme Court has noted, although life insurance is property, it is "peculiar property".[21]

Professor Appleman in his text suggests that the purpose of insurance proceeds exemption statutes is to afford the fullest protection possible to the beneficiary except where the effect would invoke constitutional inhibitions.[22]

The history of Washington's statute also sheds some light on the present issue. The first statute exempting proceeds of life insurance was contained in the Laws of 1895, ch. 125, § 1, p. 336 and provided:

> That the proceeds or avails of all life insurance shall be exempt from all liability for any debt.

In 1914, this court held that property acquired out of the proceeds of a life insurance policy was *not* exempt from the "after incurred debts" of the beneficiary. *Reiff v. Armour & Co.*, 79 Wash. 48, 49, 139 P. 633 (1914). The court explained that the theory upon which insurance moneys are exempt from creditors' claims was that "the creditor can claim no equity in a fund that had been in no way used as a basis for the credit".[23] The court went on to explain that the proceeds could not be exempt from the beneficiary's *after incurred debts* because otherwise the beneficiary could use the insurance proceeds to secure credit and then claim immunity from such creditors.

In 1927, the Legislature amended the insurance exemption statute and added virtually the same language used by

---

[20]*Kneisley*, 193 Wash. at 378.

[21]*Burlingham v. Crouse*, 228 U.S. 459, 472, 57 L. Ed. 920, 33 S. Ct. 564 (1913).

[22]J. & J. Appleman § 1342, at 576.

[23]*Reiff v. Armour & Co.*, 79 Wash. 48, 52, 139 P. 633 (1914).

the *Reiff* court. Laws of 1927, ch. 92, § 2, p. 72 provided in relevant part

> That the proceeds or avails of life insurance . . . shall be exempt . . . for any debt of the beneficiary existing at the time the policy is made available for his use . . .

Compare this to the language in *Reiff*, 79 Wash. at 51, holding the intent of the law is to exempt proceeds of an insurance policy from the debts of the insured and "from the debts of the beneficiary existing at the time the policy is made available for his use".

■ This portion of the 1927 statute is essentially unchanged in the present insurance proceeds exemption statute[24] which states in pertinent part that

> proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, existing at the time the proceeds or avails are made available for his own use.

This history tends to show that the Legislature narrowed the exemption to include only debts existing at the time the beneficiary received the proceeds because otherwise a beneficiary could obtain credit based upon ownership of such proceeds and yet refuse to meet such obligations. An amended statute is interpreted in the light of court decisions that may have prompted the amendment.[25] The fact that the amendment of 1927 used the identical language which had been used by the *Reiff* court demonstrates that the change in the law was motivated by the same concerns as those enunciated by the *Reiff* court.

■ The judgment creditors argue that a "wrongdoing" beneficiary should not be accorded the statutorily created exemption for life insurance proceeds. No law was cited, and none has been located, to support such a judicial amendment to this exemption statute. The Act itself discusses certain kinds of wrongful action and limits the scope of the exemption based on such conduct. For example,

---

[24]RCW 48.18.410(1).

[25]*State v. Dubois*, 58 Wn. App. 299, 303, 793 P.2d 439 (1990) (citing 1A C. Sands, *Statutory Construction* § 22.29 (4th ed. 1985)).

anticipating the potential abuse of this exemption, the Legislature made provisions in the event attempts were made to defraud creditors.[26] Those sections, however, are not relevant to this case. To withhold the statutory exemption because of "wrongful" civil conduct not dealt with in the Act would create a test which would be impossible to predict or apply. For example, the courts would have to decide on a case by case basis such questions as whether an intentional breach of contract is more "wrong" than a negligent act by the life insurance beneficiary which gives rise to the claim for damages. We would not be warranted in adding any such qualifications to the statute and decline to do so.

■ Given the liberal construction accorded to the exemption provided in the insurance proceeds exemption statute (RCW 48.18.410), the purpose of the Act to afford protection to life insurance beneficiaries, and the history of the statute, we conclude that the term "liability on any debt" must be given a broad construction.

In this case, assuming that the civil claim is in fact valid, that claim "existed" prior to the entry of the judgment. The judgment *confirmed* the existence of the liability and established the amount of the debt; the obligation or responsibility, however, arose at the time the acts giving rise to the liability were committed.

This court has held that the life insurance exemption statute should not be construed so as to wipe out the protective benefits of the policy or defeat the carefully considered and deliberately enacted statutory purpose of the Act.[27] To hold that an unliquidated civil claim is not a debt for purposes of the life insurance proceeds exemption statute would seriously dilute the protective benefits of the statute for all future insureds and beneficiaries who might find themselves in an analogous position.

---

[26]RCW 48.18.410(3)(b), (c).

[27]*Elliott*, 74 Wn.2d at 620.

We conclude from the foregoing, therefore, that the concept of "debt" in the context of this statute includes an unliquidated civil claim wherein the conduct giving rise to the liability occurred prior to the time the insurance proceeds became available to the beneficiary. In this case, the conduct giving rise to the liability occurred in 1983 and 1984 and the insurance proceeds were not made available to the beneficiary until 1989. The proceeds of the insurance policy, therefore, are exempt from the judgment creditor under Washington's life insurance proceeds exemption statute.

Thus, we answer the certified question from the federal court as follows: for purposes of the application of Washington's life insurance proceeds exemption statute, RCW 48.18.410, a defendant's liability on a debt is created at the time the alleged wrongful conduct occurred and not at the time the judgment was entered.

## ATTORNEYS' FEES

The judgment debtor requests that in the event this court determines that the insurance proceeds are exempt property, attorneys' fees attributable to the certified question proceeding be awarded to her.

After the federal court certified the exemption question to this court, the creditors instituted a garnishment proceeding in the Superior Court of the State of Washington for Snohomish County. The debtor now argues that she should be entitled to attorneys' fees in this court because this is in actuality a determination of the garnishment proceedings. Alternatively, the debtor asks this court to direct the Superior Court for Snohomish County to award attorneys' fees in that action. These arguments are not well taken.

■ Generally, attorneys' fees are recoverable only if specifically authorized by statute, by agreement of the parties or upon a recognized equitable ground.[28] Although the federal court certification statute provides that costs should be equally divided between plaintiff and defendant (subject to reallocation as between the parties by the federal court

---

[28]*Clark v. Horse Racing Comm'n*, 106 Wn.2d 84, 92, 720 P.2d 831 (1986).

involved), it does not provide for the award of attorneys' fees.[29] We therefore deny the debtor's request for attorney fees in this court except insofar as statutory attorneys' fees are permitted in accordance with RAP 16.16(f).

The debtor asks, in the alternative, that this court order the Superior Court to award attorneys' fees in the state court garnishment proceeding. Our review powers are instituted upon acceptance of jurisdiction and the garnishment action in Snohomish County is not before this court. We decline to decide an issue in a case which is not before us.

This opinion shall be certified to the United States District Court as provided in RAP 16.16(g).

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

---

[29]RCW 2.60.030(3). *See* RAP 16.16(f).