928 P.2d 1094 (1996)
131 Wash.2d 104
In the Matter of the ESTATE OF Margaret O. BURNS, Deceased,
DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent,
v.
Michael L. OLVER, personal representative, Petitioner.
In the Matter of the ESTATE OF Doris R. WHEELER, Deceased,
DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent,
v.
Richard T. WHEELER and James A. Wheeler, Jr., personal representatives, Petitioners.
Nos. 63616-8, 63713-0.
Supreme Court of Washington, En Banc.
January 9, 1997.
Helsell and Fetterman, L.L.P., Jonathan P. Meier, Seattle, amicus curiae on behalf of National Academy of Elder Law Attorneys.
Karr, Tuttle and Campbell, Joseph D. Holmes, Jr., Merrick and Olver, Michael L, Olver, Seattle, for Petitioners.
Dana M. Reid, Medina, for Respondent.
MADSEN, Justice.
The personal representative of decedent Margaret 0. Burns and the co-personal representatives of decedent Doris R. Wheeler dispute the State's recovery, under former RCW 43.20B.140, for preenactment or reamendment medical care benefits provided to the decedents during their lifetimes. The trial courts in both cases issued summary *1095 judgment in favor of the Estates. The Court of Appeals reversed. We find that recovery of preenactment or preamendment benefits constitutes improper retroactive application of the statute and reverse the Court of Appeals.

STATEMENT OF THE CASE
Michael Olver is the personal representative for the estate of Margaret 0. Burns. From March 1986, until her death in 1993, Ms. Burns received medical care benefits from the Department of Social and Health Services (DSHS). In 1987, Washington enacted a provision authorizing DSHS to recover the cost of medical care benefits from the recipient's estate after her death. See former RCW 43.20B.140. When Ms. Burns died in 1993, DSHS filed a claim against her estate for reimbursement of all benefits she had received starting in 1986. The amount of the claim was $17,259.31. The personal representative allowed DSHS to recover only the benefits paid after the statute's enactment in 1987. DSHS therefore recovered only $10,034.02.
DSHS sued the Burns Estate to recover the preenactment benefits. The parties stipulated to the facts and filed cross motions for summary judgment The trial court granted the Estate's motion. The Court of Appeals reversed and instructed the trial court to enter judgment in favor of DSHS.
Richard T. Wheeler and James A. Wheeler are co-personal representatives for the estate of their mother, Doris R. Wheeler. Between June 1991 and her death on August 16, 1993, Ms. Wheeler received $49,604.18 in medical benefits from the State. Ms. Wheeler left her entire estate, with total assets of $73,000, to her two adult children. When Ms. Wheeler started receiving benefits the recovery statute allowed a $50,000 exemption if any children survived the beneficiary. Beyond this exempted amount, the statute permitted DSHS to claim up to 35 percent of remaining estate assets. Former RCW 43.20B.140(1)(c). On July 25, 1993, approximately one month before Ms. Wheeler died, the Legislature eliminated the $50,000 exemption and allowed only $27000 set aside for personal property. Laws of 1993, ch. 272, § 2. Between the effective date of this amendment and her death, Ms. Wheeler received $791.34 in medical benefits.
After Ms. Wheeler died, DSHS filed a claim against the Wheeler Estate for $49,604.18. DSHS argues that the 1993 amendment eliminating the $50,000 exemption applies to all estates arising after the amendment's effective date. In contrast, the Estate argues that even when an estate arises after that date, the amendment does not apply to preenactment benefits. The Estate therefore calculated the Department's recovery for benefits received before July 25, 1993, according to the preamendment statute. With the $50,000 exemption, and 35 percent cap on remaining estate assets, DSHS recovered $8,000 ($73,000 - 50,000 = 23,000 × 35% = $8,000).
In addition to the $8,000 amount, the Wheeler Estate also allowed the Department to recover $791.34 for benefits received after July 25, 1993. The Estate later paid the full amount claimed by DSHS to avoid accruing interest, and counterclaimed for a refund. The parties filed cross motions for summary judgment. The trial court entered judgment in favor of the Wheeler Estate. The Court of Appeals reversed in an unpublished opinion.
The Burns Estate challenges the application of RCW 43.20B.140; whereas, the Wheeler Estate challenges the application of the statute's amendment at RCW 43.20B.140(1)(c). Both cases, however, present the same central issue of whether these provisions apply to preenactment or preamendment benefits. This court granted review in In re Estate of Burns, 129 Wash.2d 1003, 914 P.2d 66 (1996), on April 9, 1996. In re Estate of Wheeler, 129 Wash.2d 1006, 917 P.2d 129 (1996), was consolidated with Burns on May 8, 1996.

DISCUSSION
In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act (TEFRA), which gives the states several optional methods of recovering payments for medical care. These methods give the states access to the home equity of Medicaid recipients. *1096 In 1987, Washington chose one of these methods by adding a new section, RCW 74.09.750, under "Revenue Recovery Procedures Revised for the Department of Social and Health Services." Laws of 1987, ch. 283, § 13. The new section was later recodified as former RCW 43.20B.140. Until July 1993, when the Legislature eliminated the $50,000 exemption in RCW 43.20B.140(1)(c), the statute provided in relevant part:
(1) The department is authorized to recover the cost of medical care provided to a recipient who was sixty-five years or older, upon the recipient's death except:
(a) Where there is a surviving spouse; or
(b) Where there is a surviving child under 21 years of age or blind or disabled as defined in the state plan under Title XIX of the social security act; or
(c) To the extent of the first fifty thousand dollars of the estate value at the time of death, where there are surviving children other than as defined above, and not to exceed thirty-five percent of the remainder.
(2) The department may assert and enforce a claim against the estate of the deceased recipient for the debt in subsection (1) of this section, in accordance with chapter 11.40 RCW.
(3) The remedies in subsection (2) of this section are nonexclusive and upon the death of the recipient, the department shall have a lien for the debt in subsection (1) of this section. The lien attaches to the real property of which the deceased recipient was seized immediately before death. Upon subsequent filing of the notice ... the Ken shall be deemed to relate back and be effective against such property as of the date of the recipient's death. Recovery under the lien shall be upon the sale or transfer of the subject property.
Former RCW 43.20B.140.
In 1993, the Legislature replaced the $50,000 exemption with the following language:
For family heirlooms, collectibles, antiques, papers, jewelry, photos, or other personal effects that have been held in the possession of the deceased recipient to which a surviving child may otherwise be entitled not to exceed a total fair market value of two thousand dollars.
RCW43.20B.140(1)(c).[1]
As a general rule, courts presume that statutes operate prospectively unless contrary legislative intent is express or implied. Moxumber v. Shafer, 96 Wash.2d 568, 570, 637 P.2d 645 (1981); Baker v. Baker, 80 Wash.2d 736, 741, 498 P.2d 315 (1972); Pape v. Department of Labor & Indus., 43 Wash.2d 736, 741, 264 P.2d 241 (1953); In re Cascade Fixture Co., 8 Wash.2d 263, 272, 111 P.2d 991 (1941). Courts disfavor retroactivity because of the unfairness of impairing a vested right or creating a new obligation with respect to past transactions. Landgraf v. USI Film Prods., 511 U.S. 244, ___, 114 S.Ct. 1483, 1500, 128 L.Ed.2d 229 (1994); Id. at ___, 114 S.Ct. at 1505 (stating that a statute has a genuinely retroactive effect if it impairs rights a party possessed when he acted, increases his liability for past conduct, or imposes new duties with respect to completed transactions); In re Cascade Fixture Co., 8 Wash.2d at 272, 111 P.2d 991 (stating that retroactive legislation changing vested rights is not favored); Adcox v. Children's Orthopedic Hosp. & Medical Ctr., 123 Wash.2d 15, 30, 864 P.2d 921 (1993) (declining to apply a statute retroactively because it created a new civil penalty for noncomplying hospitals). Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly. Landgraf, 511 U.S. at ___, 114 S.Ct. at 1497.
A statute operates prospectively when the precipitating event for operation of the statute occurs after enactment, even when the precipitating event originated in a situation existing prior to enactment. Aetna Life Ins. Co. v. Washington Life & *1097 Disability Ins. Guaranty Ass'n, 83 Wash.2d 523, 535, 520 P.2d 162 (1974); Landgraf, 511 U.S. at ___, 114 S.Ct. at 1499 (stating that "[a] statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment... or upsets expectations based in prior law"). A statute "is not retroactive merely because it relates to prior facts or transactions where it does not change their legal effect." State v. Belgarde, 119 Wash.2d 711, 722, 837 P.2d 599 (1992) (quoting State v. Scheffel, 82 Wash.2d 872, 879, 514 P.2d 1052 (1973), appeal dismissed, 416 U.S. 964, 94 S.Ct. 1984, 40 L.Ed.2d 554 (1974)); Landgraf, 511 U.S. at ___, 114 S.Ct. at 1499.
The parties in this case agree that the language of RCW 43.20B.140 shows that the Legislature intended only prospective application of the statute. They disagree, however, as to what that means. DSHS contends that the statute and its amendment operate prospectively so long as they apply only to estates created after the provisions' effective dates, 1987 and 1993 respectively, because the legal obligations fall only upon the estates and not the recipients. The statute clearly permits the State to collect payment only upon the recipient's death. Therefore, the Department argues, liability arises only after creation of the estates. Furthermore, the statute and its amendment are applicable only if no spouse or children are living when the estates arise. Thus, the "precipitating event" is the creation of the estate.
The Estates argue that DSHS's interpretation gives the provisions retroactive effect when they apply to preenactment or preamendment benefits because they attach new legal consequences to the decedents' acceptance of benefits. Specifically, the provisions grant new rights to DSHS and impair the vested rights of recipients. The Burns Estate argues that application of the statute to pre-1987 benefits grants the State a claim of reimbursement and a right to a lien which did not exist before 1987. Application of the statute thereby imposes duties upon Ms. Burns that did not exist when she applied for and received the benefits. Similarly, the Wheeler Estate argues that application of the 1993 amendment impairs the right to receive medical assistance without encumbering a portion of estate assets with an obligation to repay. The recovery statute thus imposes new legal ramifications on the completed transaction of giving and receiving benefits.
The Estates also argue that the preenactment or preamendment acceptance of benefits "creates the liability" for which the State now seeks to collect. Br. of Resp't (Burns) at 19; Supp. Br. of Dep't (Wheeler) at 7. Thus, the acceptance of benefits is the precipitating event for application of the statute. If the recovery statute retroactively attaches liability to the acceptance of benefits, then the liability necessarily would be that of the decedent, and not merely that of the estate. Accordingly, the Wheeler Estate argues that an estate is not a legal entity separate from a person, but a word that describes a person's property before and after death.
To determine which activity the challenged provisions regulate, we turn to the plain language of the statute. Section 2 discusses the State's right to recover benefit payments as a "debt" owed by the Medicaid recipient. Section 3 allows the State to collect payment by imposing a lien on the recipient's estate. According to the plain language of the statute, the regulated activity is the creation of debt and the collection of such debt by imposing claims or liens on recipients' estates.
DSHS argues, however, that the statute does not regulate repayment of debts owed by Medicaid recipients because the statute imposes liability only on their estates. The Department maintains that the statute clearly contemplates recovery from probate estates and not from recipients themselves. However, the time of payment upon a recipient's death does not change the regulated activity from creation and collection of a debt to disposition of an estate.
In a prior case, this court held that although a debt is payable only upon death, the time of payment does not change the debt into something testamentary in character. In re Estate of Krueger, 11 Wash.2d 329, 336, 119 P.2d 312 (1941) (holding that the payment of a contractual obligation was not a testamentary transfer even though it was payable at the time of the obligor's *1098 death); Gostina v. Whitham, 148 Wash. 72, 74, 268 P. 132 (1928) (stating that an "instrument founded upon a consideration, whereby one agrees to pay another a definite sum, does not partake of a testamentary character simply because the time of payment be postponed until death."). Thus, although recipients pay off their debts to the State only upon their deaths, the purpose of the challenged provisions is to regulate the collection of debts owed by Medicaid recipients, not the disposition of their estates.
Rather than rely on principles regarding debts and liens, the Department mistakenly relies on a case involving inheritance taxes. Specifically, the State relies on a prior statement by this court that the state's ability to take taxes and exactions from a decedent's estate rests on the principle that a state "may, if it so chooses, take to itself the whole of [estate] property ... without regard to the wishes or direction of the person who died possessed of it....". In re Estate of Sherwood, 122 Wash. 648, 654, 211 P. 734 (1922).
Initially, general statements such as the one quoted above are to be confined to the facts and issues of that particular case. State ex rel. Wittier v. Yelle, 65 Wash.2d 660, 670, 399 P.2d 319 (1965). Furthermore, the State has broad powers of taxation. Therefore, taxation of the transfer of a decedent's property is significantly different from imposition of a claim or lien on an estate. The State has "plenary power over inheritance taxation; it is within the legislature's power to prescribe the nature, kind, extent and amount of such taxes, and to what degree the estate or the heirs may be taxed ... as conditions of bequeathing, devising and inheriting property." In re Estate of Toomey, 75 Wash.2d 915, 919, 454 P.2d 420 (1969) citing In re Estate of Sherwood, 122 Wash. 648, 211 P. 734 (1922)).
The Department's recovery for benefits upon a recipient's death is unlike inheritance taxation. With inheritance taxes, the amount of the estate property received by the inheritor determines the amount owed to the State. See Sherwood's Estate, 122 Wash, at 659, 211 P. 734 (discussing the principle that an inheritance tax is leviable on the amount of property actually received). Here, however, the amount of Medicaid benefits received during one's lifetime determines the amount of the Department's recovery. Therefore, the State's reliance on cases involving inheritance taxes is misplaced.
Because RCW 43.20B.140 regulates the collection of debts through imposition of a claim or lien, principles regarding debts, liabilities, and liens govern interpretation of the statute. These principles are useful for interpreting § 6 of the 1993 amendment, which states that the act "does not have the effect of terminating or in any way moduying any liability, civil or criminal, that is already in existence on the effective date of this act." Laws of 1993, ch. 272, § 6.
Because the statute does not define "debt," "liability," or "lien," we consider the general definitions of these terms. Liability is a broad term that can have comprehensive significance, including contingent responsibility. Black's Law Dictionary 914 (6th ed. 1990). Although a debt, which is a "fixed and certain obligation to pay money or some other valuable thing," is not as broad a term as liability, it similarly can mean an obligation to make payment "either in the present or in the future." Id. at 403. See also Feminist Women's Health Ctr. v. Codispoti, 118 Wash.2d 99, 103, 821 P.2d 1198 (1991) (stating that under certain circumstances the concept of "debt" has very broad meaning). The definitions of "debt" and "liability" vary according to the statute in which the terms are used. Id. at 103, 821 P.2d 1198 (discussing the definition of "debt").
A lien is an encumbrance upon property as security for payment of a debt. Sullins v. Sullins, 65 Wash.2d 283, 285, 396 P.2d 886 (1964); Kinne v. Kinne, 27 Wash.App. 158, 161, 617 P.2d 442 (1980), review denied, 95 Wash.2d 1001 (1981); Anderson v. Grays Harbor County, 49 Wash.2d 89, 91, 297 P.2d 1114 (1956). In other words, a lien is not a debt, but a remedy for a debt. Nelson v. Nelson Neal Lumber Co., 171 Wash. 55, 61, 17 P.2d 626, 92 A.L.R. 554 (1932). In the instant cases, the lien becomes effective on the date of the recipient's death. Therefore, the lien must be a remedy for a debt that existed prior to that date.
*1099 With respect to Ms. Wheeler, the Department argues that the preexisting liability in the Laws of 1993, ch. 272, § 6 refers only to present obligations of reimbursement. However, the language of § 6 prohibits "any" modification of any preexisting liability, indicating that the Legislature intended a broad meaning for "liability." See Rettkowski v. Department of Ecology, 128 Wash.2d 508, 515, 910 P.2d 462 (1996) (interpreting the plain language "[a]ny person feeling aggrieved by any decision ...." to mean that RCW 90.14.190 broadly applied to any person feeling aggrieved by any water resource decision of the Department of Ecology). Further, the "liability, ... already in existence on the effective date of [the] act" must refer to the liability for repayment of preamendment benefits because the statute refers to no Uability other than the "debt" for reimbursement created in subsection (1). Laws of 1993, ch. 272, § 6. Therefore, § 6 prohibits modification of Ms. Wheeler's liability existing prior to enactment of the 1993 amendment.
In summary to this point, the statutory provisions at issue regulate the collection of a debt. They do so by characterizing the benefits received as a debt contingent upon existence of assets of a recipient at death, and by authorizing recovery by DSHS of that debt from those assets. The precipitating event is, therefore, the receipt of the benefits giving rise to the contingent indebtedness, and not the creation of the decedent's estate.
The State contends, however, that these cases are analogous to Aetna Life, where the statute at issue was held to apply prospectively despite drawing upon antecedent facts for its application. In Aetna Life, a statute required insurers wanting to do business in this state to become members of a guaranty association and to pay an assessment if a fellow insurer received a liquidation order. Aetna Life, 83 Wash.2d at 534-35, 520 P.2d 162. The insurers argued that the statute applied retroactively when the State collected an assessment on premiums received before its enactment. Id. This court held, however, that the statute attached no new legal consequences to the preenactment collection of premiums. The court rejected the retroactivity argument because the liquidation order for a fellow insurer, not the receipt of premiums, precipitated application of the statute. Id.
Contrary to the State's contention, Aetna Life is quite unlike the present case. In Aetna Life, the assessment on preenactment premiums did not change the legal nature of the transaction between insurers and the policyholders who had paid the premiums. By contrast, applying the statutes to allow recovery for preenactment benefits would change the legal nature of the transaction between DSHS and those who accepted Medicaid benefits. The benefits, when received, did not rise to a contingent debt. Whereas DSHS had no claim for reimbursement before the statute's enactment, the Department would have a claim against the recipient through her estate if the statute applies as the State argues. The new claim would affect a property right which in effect "Vested" when recipients received the benefits.[2]
In contrast, this court has declined to apply a statute when doing so would have impaired vested rights and thus would have given the statute in question retroactive effect. For example, in In re F.D. Processing, Inc., 119 Wash.2d 452, 463, 832 P.2d 1303 (1992), this court declined to apply a 1991 amendment to RCW 60.13.010 that impaired a bank's interest in collateral which became vested when the bank perfected its interest in 1989. Similarly, in Miebach v. Colasurdo, 102 Wash.2d 170, 181, 685 P.2d 1074 (1984), this court declined to apply a provision establishing notice requirements to property owners whose property was to be sold at a sheriffs sale. The court declined to apply the provision retroactively because it would have impaired a right in the property which became vested when the sheriff sent an order of confirmation. Id. The court noted that *1100 even a remedial statute will not be applied retroactively if it affects a substantive or vested right. Id.
We also note that recipients who know of the new legal consequence which the statutes at issue attach to receipt of benefits have the choice whether to accept the benefits knowing that recovery may be had from their estate. This possibility is a realistic consideration because Washington's medical care program pays for medical needs ranging from minor to life-threatening.[3] However, recipients of benefits paid before enactment of the statutory provisions would have had no such choice. Application of the statutory provisions in their cases therefore would, as the Estates and Amicus Curiae argue, result in the unfairness for which courts traditionally have disfavored retroactivity. See Landgraf, 511 U.S. at ___, 114 S.Ct. at 1500 (stating that the unfairness of imposing new burdens on persons after the fact justifies the presumption against statutory retroactivity). Application of the provisions would deprive Ms. Wheeler and Ms. Burns of the opportunity to decide whether to accept benefits based upon knowledge of reimbursement requirements. See Br. of Resp't (Burns) at 24; Br. of Amicus Curiae at 3, 9-10.
The State responds that the recipients could have replanned their estates or redistributed their assets after enactment of the provisions. See In re Estate of Burns, No. 54181-2-1, slip op. at 11 (Wash.App.1995). However, replanning one's estate would not have resolved the fact that the recipient had already accepted benefits that would have to be repaid to the State under the State's theory.[4]
The contrast between the instant cases and State v. Scheffel illustrates the unfairness of applying the challenged provisions to preenactment benefits. State v. Scheffel, 82 Wash.2d 872, 514 P.2d 1052 (1973), appeal dismissed, 416 U.S. 964, 94 S.Ct. 1984, 40 L.Ed.2d 554 (1974). In Scheffel, the challenged statute allowed license revocation for anyone who received three or more convictions for eertain offenses within a five-year period. Id. at 875, 514 P.2d 1052. This court permitted application of the statute to the two defendants in that case even though each had accrued two convictions prior to the act's effective date. Id. at 878, 514 P.2d 1052. Enactment of the statute put the defendants on notice that they would be classified as habitual offenders if they accrued one more violation within the statutory period. Id. Thus, the defendants could have avoided operation of the statute by refraining from committing additional violations. Id. at 878-79, 514 P.2d 1052. In contrast to Scheffel, Ms. Wheeler and Ms. Burns could not refrain from dying in order to avoid operation of RCW 43.20B.140. The statute cannot be retroactively applied to impose upon them a contingent hability for reimbursement of benefits received before the statute's enactment, payable once they died.
Finally, the State argues that the policy of mamtaining the viability of the medical care program favors its interpretation of the statute. *1101 In order to continue providing medical care to needy persons, the State should be able to recoup benefits once a recipient dies. The policy is unfair, however, when the State attempts to apply it to benefits given prior to enactment of the reimbursement provisions.
While decisions from other jurisdictions are not binding, it is of interest that the Supreme Courts of California and Arkansas reached conflicting results when they interpreted recovery statutes similar to RCW 43.20B.140. The deeply divided (4-3 decision) California Supreme Court held that the Department of Health Services could recover the cost of Medi-Cal benefits paid prior to the effective date of the recovery statute when the recipient died after the statute took effect. Kizer v. Hanna, 48 Cal.3d 1, 767 P.2d 679, 682, 255 Cal.Rptr. 412 (1989). The Kizer court concluded that such an interpretation did not give the statute retroactive effect. Id. 767 P.2d at 686, 255 Cal.Rptr. at 419. By contrast, the Arkansas Supreme Court unanimously held that the Department of Human Services could not recover Medicaid payments given prior to the effective date of the recovery statute even though the recipient died after the statute took effect. Estate of Wood v. Arkansas Dep't of Human Servs., 319 Ark. 697, 894 S.W.2d 573 (1995). A contrary interpretation would give the statute retroactive application by permitting it to affect a decedent's vested rights. Id. 894 S.W.2d at 576.
The Arkansas decision applies the rules on retroactivity discussed above. Before enactment, the recipient reasonably would have considered the benefits to be an entitlement. Id. at 576. After enactment, the recipient had a debt payable upon her death. Id. Payment for this debt would come out of estate assets, along with all the other debts incurred by the decedent during her lifetime. We agree with the Arkansas Supreme Court and three justices of the California Supreme Court who decided that equivalent recovery statutes transformed the recipient's property right in the Medicaid payments already received into a loan to be repaid from estate assets. See Estate of Wood, 894 S.W.2d at 576; Kizer, 767 P.2d at 688, 255 Cal.Rptr. at 421.

CONCLUSION
RCW 43.20B.140 and its amendment apply prospectively and cannot be applied retroactively to impose on Medicaid recipients new obligations with respect to past transactions with the State Department of Social and Health Services. We reverse the Court of Appeals and reinstate the judgment of the trial court. We do not reach the Estates' remaining arguments regarding due process and the contract clause.[5]
SMITH, GUY, JOHNSON and ALEXANDER, JJ., concur.
TALMADGE, J., dissents by separate opinion.
DURHAM, C.J., and DOLLIVER and SANDERS, JJ., dissent.
TALMADGE, Justice, dissenting.
The Legislature enacted former RCW 43.20B.140 in 1987 to ensure eligible elderly citizens receive necessary nursing home and medical care without regard to cost, but taxpayers would not be forced to bear the cost of such services if, upon the elderly person's death, their estate had assets and certain hardship conditions were not present. The majority's analysis, however, ignores the plain language of the recovery statute and our principles governing prospective application of statutes, and provides a windfall to heirs of elderly recipients of government benefits at the expense of Washington taxpayers generally. For these reasons, I respectfully dissent.
A. THE PLAIN LANGUAGE OF THE STATUTE
In reviewing a statute, our obligation is to give effect to the intent of the Legislature. We start first with the plain language of the *1102 statute. Laeey Nursing Ctr., Inc. v. Department of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995). If the language of the statute is plain on its face, no further judicial construction is necessary. State v. Heiskell, 129 Wash.2d 113, 122, 916 P.2d 366 (1996); State v. McCraw, 127 Wash.2d 281, 288-89, 898 P.2d 838 (1995). Here, the language of the statute is plain and the intent of the Legislature is manifest. The Legislature intended that where eligible elderly persons received nursing home or medical care at public expense, their estates would be obliged, upon their death, to reimburse the state, if the statute's hardship conditions were not present.
Former RCW 43.20B.140[1] states in pertinent part:
(1) The department is authorized to recover the cost of medical care provided to a recipient who was sixty-five years or older, upon the recipient's death except:
(a) Where there is a surviving spouse; or
(b) Where there is a surviving child under 21 years of age or blind or disabled as defined in the state plan under Title XIX of the social security act;....
(2) The department may assert and enforce a claim against the estate of the deceased recipient for the debt in subsection (1) of this section, in accordance with chapter 11.40 RCW.
(Emphasis added.) Thus, the statute empowers the state through the Department of Social & Health Services (DSHS) to recoup payments made to an eligible recipient only if all of the statutory requirements are met. The recipient must (1) be deceased, (2) have been 65 years or older when the medical care was provided, (3) have no surviving spouse, (4) have no surviving children under 21 years of age, (5) have no surviving children who are blind, and (6) have no surviving children who are disabled, before DSHS can recover payments made to the recipient.[2]
As the Court of Appeals noted in In re Estate of Burns 79 Wash.App. 558, 565, 904 P.2d 301 (1995), and In re Estate of Wheeler, No. 34789-6-1, slip op. at 4 (WnApp. Oct. 2, 1995), the plain language of RCW 43.20B.140 provides that the recipient's death is the triggering event for recoupment Moreover, the existence of a recipient's survivors cannot be determined until the death of the recipient, whose demise triggers RCW 43.20B.140.
The Legislature also determined recoupment was inappropriate where certain hardship conditions were present. Seeking reimbursement from an elderly recipient's estate where a surviving spouse, dependent or disabled child were present would create unnecessary hardship for those families.
B. RCW 43.20B.140 APPLIES PROSPETIVELY ONLY
The parties here all agree RCW 43.20B.140 must be applied prospectively. The majority believes the statute applies retr roactively if it allows recoupment by DSHS of benefits paid to eligible recipients prior to the effective date of the statute, but its analysis of retroactivity bogs down in a lengthy discussion of debts and hens. Majority op. at 1097-99. Moreover, the majority ignores the clear traditional rule regarding whether a statute is retroactively or prospectively applied. "The key to detennining if [a statute] operates retroactively is whether the event triggering its application occurred before or after the amendment took effect." State v. Belgarde, 119 Wash.2d 711, 722, 837 P.2d 599 (1992).
A statute operates prospectively when the precipitating event for the application *1103 of the statute occurs after the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to the enactment of the statute.
Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n, 83 Wash.2d 523, 535, 520 P.2d 162 (1974); State ex rel. Am. Sav. Union v. Whittlesey, 17 Wash. 447, 454, 50 P. 119 (1897). Whether a particular application is retroactive will depend upon the determinative or triggering event. See Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 857 n. 3, 110 S.Ct. 1570, 1588 n. 3, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring). The critical inquiry in this regard is the relevant activity the rule regulates. Landgrafv. USI Film Prods., 511 U.S. 286, ___, 114 S.Ct. 1522, 1524, 128 L.Ed.2d 229 (1994) (Scalia, J., concurring).
The activity former RCW 43.20B.140 regulates is DSHS's recoupment of payments made to recipients. Under the terms of the statute, because recoupment is not triggered until all conditions precedent (such as the absence of hardship) are met, and as those conditions cannot be determined until the death of the recipient, the recipient's death and the meeting of all contingencies is the "precipitating event" for the application of the statute. The precipitating event here, i.e., the death of Burns and Wheeler and the determination that all hardship conditions were not present, occurred after enactment of former RCW 43.20B.140; thus, the statute is prospectively applied to all benefits received by Burns and Wheeler.
The majority voices a concern about the legal effect of past transactions between DSHS and recipients. Majority op. at 1099. But we have stated a statute may be applied prospectively although it affects events occurring prior to its enactment:
A statute is not retroactive merely because it relates to prior facts or transactions where it does not change their legal effect. It is not retroactive because some of the requisites for its actions are drawn from a time antecedent to its passage....
State v. Scheffel, 82 Wash.2d 872, 879, 514 P.2d 1052 (1973) (citing cases), appeal dismissed 416 U.S. 964, 94 S.Ct. 1984, 40 L.Ed.2d 554 (1974); Belgarde, 119 Wash.2d at 722, 837 P.2d 599. Of course, payment of benefits to eligible recipients is a requisite for application of the recovery statute. But, because the statute by its terms is triggered only upon the death of the recipient and the absence of hardship conditions and seeks recovery only from the recipient's estate, it does not change the legal effect of any past transactions between the recipient and the state. See Kizer v. Hanna, 48 Cal.3d 1, 767 P.2d 679, 682-84, 255 Cal.Rptr. 412 (1989). The statute affects only the distribution of assets of the estate arising after the statute's effective date. Id.[3]
Notwithstanding the unambiguous language of RCW 43.20B.140, the majority adopts the reasoning of the Arkansas Supreme Court in Estate of Wood v. Arkansas Dep't of Human Servs., 319 Ark. 697, 894 S.W.2d 573 (1995), and the dissent in Kizer v. Hanna, 48 Cal.3d 1, 767 P.2d 679, 255 Cal. Rptr. 412 (1989) (Majority op. at 1100-1101), determining recovery statutes may not be applied to benefit payments received prior to the enactment of the statute. The majority agrees with the Arkansas court, which labels payments to recipients under the Arkansas statute as "debts" payable at the death of the recipient.
The majority indicates payments to Burns and Wheeler are properly characterized under the statute as debts of the recipient to be repaid to DSHS upon the recipient's death. The majority's assertion (Majority op. at 1097) "the time of payment upon a recipient's death does not change the regulated activity from creation and collection of a debt to disposition of an estate" is untenable in this case as it ignores the importance and effect of the statute's contingency language. *1104 Recovery under RCW 43.20B.140 is contingent on the six factors stated above; no debt arises upon the payment of benefits to or for the recipient. See Kizer, 767 P.2d at 684-85, 255 Cal.Rptr. at 417-18.
RCW 43.20B.140 is different from the Arkansas recovery statute, but similar to the California recovery statute. The Arkansas statute contains no hardship contingency language. It simply states that benefits paid to recipients "shall, upon the death of the recipient, constitute a debt to be paid." See Arkansas Code 20-76-436.[4] By contrast, the California and Washington recovery statutes both contain similar hardship contingency clauses. Under neither Washington nor California statutes may recovery of payments occur where the recipient has a surviving spouse, or a child who is dependent, blind or disabled. See former RCW 43.20B.140, and CaLWelf. & InstCode Sec. 14009.5 (cited in Kizer, 767 P.2d at 680 n. 2, 255 Cal.Rptr. at 412 n. 2).[5] Under the Arkansas statute, the state's right to reimbursement is automatic. Under the Washington and California statutes, the state's right to reimbursement is not triggered until the appropriate hardship contingencies are proved not to be present. Such hardship contingencies cannot be determined until the death of the recipient. Thus, because the right to reimbursement under the Arkansas statute is not subject to hardship conditions and is therefore certain, liability for repayment of benefits attaches with receipt of the payment. By contrast, under the former Washington and California statutes recoupment is not certain until the death of the recipient and a determination of the hardship conditions. No liability attaches with the receipt of the payment.
The decision of the California Supreme Court in Kizer v. Hanna, 48 Cal.3d 1, 767 P.2d 679, 255 Cal.Rptr. 412 (1989) is based on contingency language comparable to that found in RCW 43.20B.140. In Kizer, the California Supreme Court held any right to reimbursement and corresponding hability arose against the estate after the recipient's death, and only if enumerated contingencies were met:
[The California recovery statute] states that the Department has a claim against "the estate of the decedent ..." (Emphasis added.) ... It further provides that the Department may not claim reimbursement "where the eligible person was under 65 when services were received, or where there is a surviving spouse, or where there is a surviving child who is under age 21 or who is blind or permanently and totally disabled. ..." The plain language of the statute dictates that the Department's right to reimbursement is against the recipient's estate. Consequently, the Department's right to reimbursement arises, if at all at the time of the recipient's death and is dependent on conditions existing at such time.
Equally clear from the language of [the recovery statute] is the fact that no liability to reimburse the Department arises until the ... recipient's death. *1105 Kizer, 767 P.2d at 683, 255 Cal.Rptr. at 416 (emphasis added). As the Washington recovery statute contains the same contingencies, the same rationale holds. Because no right to reimburseme arose against Burns or Wheeler until both their deaths and the determination of conditions precedent in each case, no liability arose against the estates until and unless such conditions were met. See Kizer, 767 P.2d at 684-85, 255 Cal.Rptr. at 417-18.
RCW 43.20B.140 operates prospectively only. By its plain language, it is triggered only upon the death of the recipient and proof that the hardship conditions are not present, not when recipients first received payments. The statute was properly applied by the Court of Appeals to the Burns and Wheeler estates, even though its application affects payments received prior to the statute's enactment.
C. PUBLIC POLICY
Although I agree with Judge Agid in her concurring opinion in Estate of Burns that the plain language of RCW 43.20B.140 resolves the issues now before us without further resort to judicial construction of the statute, Estate of Burns, 79 Wash.App. at 568, 904 P.2d 301 (Agid, J., concurring), the majority in the guise of construing the statute raises a number of public policy issues that require analysis.
The majority rejects complete application of the recovery statute because it asserts "vested rights" of the recipients in nursing care and medical payments would be affected. Majority op. at 1099. However, the recovery statute authorizes recoupment from the deceased recipient's estate only after the recipient's death. As the Court of Appeals correctly recognized, "a testator has no vested right to control the testamentary disposition of property because such disposition rests entirely upon legislative will." Estate of Burns, 79 Wash.App. at 566, 904 P.2d 301, citing In re Sherwood's Estate, 122 Wash. 648, 654-55, 211 P. 734 (1922).[6] Any testamentary disposition of estate assets is subject to plenary legislative control and must conform to laws in force at the time of the recipient's death. See In re Ward's Estate, 183 Wash. 604, 609, 49 P.2d 485, 102 A.L.R. 496 (1935) (citing cases); In re Ziegner's Estate, 146 Wash. 537, 540, 264 P. 12 (1928); Irwin v. Rogers, 91 Wash. 284,286-87, 157 P. 690, L.R.A.1916E, 1130 (1916) (citing cases).
The majority attempts to circumvent this long-standing principle of law by distinguishing Sherwood's Estate as a tax case, and asserting the analysis stated therein is peculiar to the state's broad powers of taxation. Majority op. at 1098. This principle is not limited to tax cases. In Irwin v. Rogers, 91 Wash. 284, 157 P. 690, L.RA1916E, 1130 (1916) (not a tax case), we noted "the right to make a testamentary disposition of property is purely a creature of statute and within absolute legislative control," Id. at 286-87, 157 P. 690 (citing cases), and holding real estate cannot be devised under a nuncupative will. Id. at 289, 157 P. 690. In In re Ziegner's Estate, 146 Wash. 537, 540, 264 P. 12 (1928), a case concerning the effect of a statute on a will executed prior to the statute's enactment (again, not a tax case), we noted the state's authority to impose limitations on the right to make testamentary dispositions is absolute and paramount. Ziegner, 146 Wash, at 541, 264 P. 12. At issue in Zeigner was whether a statute which revoked a will made subsequent to a divorce as to the divorced spouse was applicable to a will executed prior to the statute's enactment. We stated a will speaks as of the date of the testator's death, and must conform to the law in force at the time, and held the statute properly applied to the will of a testator who died after the statute's enactment, even *1106 though the will was executed long before the statute's effective date. Id. at 538-41, 264 P. 12. We held the statute applied prospectively because the triggering event, death of the testator, occurred after the statute's effective date, even though it affected a document and expectations of the parties formulated years before.
The majority also asserts "Wheeler and Burns could not refrain from dying in order to avoid operation of RCW 43.20B.140." Majority op. at 1100. Again, the majority misses the importance of the statute's contingency language. Death of the recipient is only one of six conditions precedent (and the time of determining four of the six conditions), all of which must be met before recoupment under the statute is triggered.
Any expectations recipients may have regarding testamentary disposition are subject to the laws in force at the time of the recipient's death. Thus, any distributions from the estates of Burns and Wheeler are subject to the provisions of the recovery statute in force at the time of their deaths.
The majority also asserts it is "unfair" to apply the recovery statute to amounts paid to recipients prior to enactment of the reimbursement provisions. Majority op. at 1101. First, it is not the obligation of this Court to assess the wisdom of a legislative enactment, absent a constitutional impediment. We should not substitute our judgment for that of the Legislature and "inquire into the policies underlying a clear legislative enactment." Heiskeli, 129 Wash.2d at 122, 916 P.2d 366.
A key element of this supposed unfairness is that the recipients did not know (did not have notice) at the time they received benefits that their estates would be obliged to reimburse the State. Majority op. at 1099-1100. This argument fails because Washington's policy has long been to recover from benefit recipients to reimburse the public treasury when the recipients secure assets and later have sufficient assets to reimburse the state.[7] This policy finds expression in RCW 74.09.180 (enacted by Laws of 1959, ch. 26, § 74.09.180) and 43.20B.060 regarding recovery of benefits paid from tort recoveries; RCW 74.04.530 (enacted by Laws of 1973, 1st ex. sess., ch. 102, § 1; and recodified as RCW 43.20B.720 by Laws of 1987, ch. 75, § 49) regarding recovery of benefits paid from industrial insurance proceeds; and RCW 72.33.690 (enacted by Laws of 1967, ch. 141, § 9; recodified as RCW 43.20B.445 by Laws of 1987, ch. 75, §§ 28, 49) regarding recovery of residential habilitation costs from recipient's subsequently acquired assets. Furthermore, the general recovery provisions of RCW 43.20B, where many DSHS recovery provisions enacted from 1959 to 1987 are collected and recodified, confirm the longevity and diversity of the policy that recipients must reimburse the public fisc, if they are financially able to do so. See, e.g., RCW 43.20B.320.370 (recovery of mental illness treatment costs), RCW 43.20B.620.645 (recovery of overpayments), RCW 43.20B.120 (recovery of funeral assistance costs).
Specifically, with respect to recoupment of benefits paid to medical and nursing care recipients, Congress authorized recoupment in 1982. See Pub.L. 97-248, Title 1, § 132(b), Sept. 3, 1982, codified as 42 U.S.C. § 1396p. The Legislature authorized recoupment pursuant to federal guidelines in 1987. See, e.g., former RCW 43.20B.140 and n. 1, above. Given the longevity of reimbursement policy and the diversity of public benefit payments affected, a careful recipient or attorney for such recipient is hard pressed to claim ignorance of this general recoupment policy as expressed in numerous state and federal enactments.
Finally, the statute itself is not unfair in its application to a recipient's estate to recover public benefits previously paid, provided the *1107 hardship conditions are not present. Again, the analysis of the California Supreme Court in Kizer is instructive. The Kizer court noted the equitable safeguards, comparable to those appearing in the Washington statute, built into California's recovery statute:
In drafting the [recovery] statute the state recognized that allowing reimbursement from a Medi-Cal recipient's estate may be unfair in certain circumstances. Consequently, [the recovery statute] prohibits claims for reimbursement where the recipient is survived by a spouse or by a blind, disabled or minor child. It also prohibits claims where the recipient was under 65 when the benefits were received.... [The recovery statute] thus strikes an equitable balance between the competing interests, measured, in part, by conditions existing on the date of the recipient's death.
Kizer, 767 P.2d at 682, 255 Cal.Rptr. at 415.
By its terms, RCW 43.20B.140 carefully balances the interests of the state, the recipient and the recipient's heirs. Washington has an assistance program which ensures needy persons have access to basic medical and nursing home care without requiring them to sell their homes or impairing their ability to own certain property.[8] The present national debate on the funding of entitlement programs like Medicaid demonstrates that, as medical costs rise, the continued fiscal integrity of such programs becomes questionable. Washington's recovery statute provides an equitable and reasonable method of easing the state's financial burden, while ensuring the continued viability of public nursing and medical care programs. In short, the recovery statutes enable state assistance programs to help those persons in need when they have such need, yet insures that when the need no longer exists by virtue of the recipient's death, the benefits paid can be recouped and used to assist others in need, provided no hardship conditions specified in the statute are present. See Kizer, 767 P.2d at 681,255 Cal.Rptr. at 414.
At the same time, recovery statutes prevent the heirs of public nursing and medical care recipients from unfairly benefiting from such assistance programs because, but for these assistance programs, a recipient would probably have to sell assets including the family home in order to obtain the funds to pay for nursing and medical care. As a result of the public assistance payments, the heirs are not required to bear the full burden of the recipient's nursing and medical care during the recipient's lifetime. Kizer, 767 P.2d at 681-82, 255 Cal.Rptr. at 414-15. But for the presence of taxpayer-funded programs, it is unlikely the recipient would have had any estate at all for the heirs to claim. To allow these estates to pass to heirs without fully reimbursing the taxpayers would be the real inequity.

CONCLUSION
RCW 43.20B.140 must be applied prospectively, as the parties here agree. By its plain language, the statute is triggered only when the recipient of nursing home and medical care benefits dies and the statutory hardship conditions are not present. There is nothing unfair about applying the recovery statute to the estates of these deceased recipients to reimburse the state for benefits which allowed the estates to grow to their present size. The statute's builMn safeguards protect against undue hardship to vulnerable survivors. The heirs, however, should not receive a windfall at taxpayer expense.
Wheeler and Burns received public benefits totaling $49,604.18 and $17,259.31 respectively.[9] The Court of Appeals correctly determined the estates were obliged to fully reimburse DSHS for the benefits paid to Burns and Wheeler. The decisions of the Court of Appeals should be affirmed.
DURHAM, C.J., and DOLLIVER and SANDERS, JJ., concur.
NOTES
[1] The Laws of 1994, ch. 21, § 2, effective My 1, 1994, repealed RCW 43.20B.140 in its entirety. The Legislature enacted new provisions which were codified at RCW 43.20B.080. The new statute requires recovery, extends application to individuals 55 years of age or older, and eliminates the exemption for estates of decedents who leave surviving spouses or children. The department may waive recovery that would cause undue hardship. RCW 43.20B.080(4)(a).
[2] Changes in legislation may affect a "mere expectation" that one is qualified to receive future benefits. See Lawson v. State, 107 Wash.2d 444, 455, 730 P.2d 1308 (1986) (stating that a "vested right, entitled to protection from legislation, must be something more than a mere expectation based upon an anticipated continuance of the existing law ....") (quoting In re Marriage of MacDonald, 104 Wash.2d 745, 750, 709 P.2d 1196 (1985)).
[3] See RCW 74.09.520 ("Medical assistance Care and services included"). The provision states:

The term "medical assistance" may include the following care and services: (a) Inpatient hospital services; (b) outpatient hospital services; (c) other laboratory and x-ray services; (d) nursing facility services; (e) physicians' services, which shall include prescribed medication and instruction on birth control devices; (f) medical care, or any other type of remedial care as may be established by the secretary; (g) home health care services; (h) private duty nursing services; (i) dental services; (j) physical ... therapy and related services; (k) prescribed drugs, dentures, and prosthetic devices; and eyeglasses ...; (l) other diagnostic, screening, preventive, and rehabilitative services: [Provided, That] the department may not cut off any prescription medications, oxygen supplies, respiratory services, or other life-sustaining medical services or supplies.
[4] We agree with the State, however, that even if applied retroactively, the recovery statute would impair no vested rights of the recipients' heirs. Their rights do not vest until the testator's death. See, e.g., In re Estate of Ziegner, 146 Wash. 537, 540, 264 P. 12 (1928) (stating that no one can have a vested interest in or under a will, so long as its maker lives, because both he and the state have the power to destroy that will up to the time of his death) (citing Strand v. Stewart, 51 Wash. 685, 687-88, 99 P. 1027 (1909)); In re Estate of Wiltermood, 78 Wash.2d 238, 240, 472 P.2d 536 (1970) (holding that an heir's interest in his ancestor's estate does not vest until that ancestor's death).
[5] The Wheeler Estate also argues that the repeal of RCW 43.20B.140 removes DSHS's authorization to recover the entire cost of medical care provided to Ms. Wheeler. As DSHS points out, the Estate did not raise, brief, or argue this issue at the trial court or the Court of Appeals. We grant the State's motion to strike the supplemental brief of Petitioners.
[1] The Legislature enacted Laws of 1987, ch. 283, § 13, which was initially codified as RCW 74.09.750; and between 1990 and 1994 as RCW 43.20B.140. Since 1994, the current version of the statute is found at RCW 43.20B.080. The majority mischaracterizes this 1994 statute in stating: "The new statute ... eliminates the exemption for estates of decedents who leave surviving spouses or children." Majority op. at 1096 n. 1. This is not the case. The current Washington recovery statute, RCW 43.20B.080. incorporates the recovery guidelines of 42 U.S.C. § 1369p, which bar recovery from estates of deceased recipients during the lifetime of a surviving spouse, and minor, blind or disabled children. See 42 U.S.C. § 1369p(b)(2).
[2] An additional unstated requirement of the statute is that the estate actually have assets.
[3] This position is consistent with our holding in State v. Blank/LeBlanc, No. 63839-0, slip op. at 18-21 (Wn.2d 1996), wherein we applied the rules regarding retroactivity as expressed above in Scheffel and comparable standards as expressed in Aetna and Belgarde, and found no retroactive application where RCW 10.73.160 (which allows an appellate court to order convicted indigent defendants to pay appellate costs and fees for appointed counsel) was applied to recoup costs and fees incurred by defendants prior to the statute's enactment. The majority's position here is irreconcilable with our holding in Blank/LeBlanc.
[4] Ark.Code Ann. 20-76-436:

Recovery of benefits from recipients' estates.
Federal or state benefits in cash or in kind, including, but not limited to. Medicaid, Aid to Families with Dependent Children, and food stamps distributed or paid by the Department of Human Services, as well as charges levied by the Department of Human Services for services rendered, shall, upon the death of the recipient, constitute a debt to be paid. The Department of Human Services may make a claim against the estate of a deceased recipient for the amount of any benefits distributed or paid, or charges levied, by the Department of Human Services. (Emphasis added.)
[5] California Welfare and Institutions Code section 14009.5 (1981 amendment) reads:

"Notwithstanding any other provision of this chapter, when a decedent has received health care services under this chapter or Chapter 8 (commencing with Section 14200) the department may claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival an amount equal to the payments for the health care services received. The department may not claim where the eligible person was under 65 when services were received, or where there is a surviving spouse, or where there is a surviving child who is under age 21 or who is blind or permanently and totally disabled, within the meaning of the Social Security Act.
The department may waive its claim, in whole or in part, if it determines that enforcement of the claim would result in substantial hardship to other dependents of the individual against whose estate the claim exists." (Emphasis added.)
[6] The right of the owner of property to direct what disposition shall be made of it after his death is not a natural right which follows from mere ownership. On the contrary, the right has its sanction in the laws of the state.... The state may, if it so chooses, take to itself the whole of such property, or it may take any part thereof less than the whole and direct the disposition of the remainder; and this without regard to the wishes or direction of the person who died possessed of it, and without regard to the claims of those to whom he has directed that it be given. Stated in another way, the state's power over such property is plenary, and its right to direct its disposition unlimited.

Sherwood's Estate, 122 Wash, at 654-55, 211 P. 734.
[7] Washington has also specifically prohibited efforts by spouses of Medicaid benefits recipients to manipulate assets so as to qualify for such public benefits since 1981 `s Deccio Amendment. Laws of 1981, 2d ex. sess., ch. 3, § 1, codified as RCW 74.09.532. (Repealed by Laws of 1989, ch. 87, § 11; and subsumed by Id. at § 47, codified as RCW 74.09.565, .575, .585, and .595 referencing broad Federal guidelines (i.e. sections 1917 and 1924 of the Social Security Act) which may be found at 42 U.S.C. 1396p and r-5 regarding allocation and transfer of resources affecting public assistance eligibility.)
[8] Indeed, certain assets such as a residence, home furnishings, and a motor vehicle may be excluded from the determination of a Washington applicant's eligibility for nursing and medical care. See RCW 74.04.005(1), (7), (10)(a)-(c), and (12). Cf., Kizer, 767 P.2d at 680 n. 3 and 681, 255 Cal.Rptr. at 413 n. 3 and 414.
[9] Wheeler left an estate with assets totaling $73,000.