251 P.3d 289 (2011)
In the Matter of the ESTATE OF James W. HAVILAND.
Donald Haviland, Elizabeth Haviland, and Martha Clauser, Appellants,
v.
Mary Haviland, Respondent.
No. 65101-3-1.
Court of Appeals of Washington, Division 1.
May 16, 2011.
Carol S. Vaughn, Suzanne Churchwell Howle, Howard Mark Goodfriend, Smith Goodfriend PS, Seattle, WA, for Appellants.
Ladd B. Leavens, William Kennedy Rasmussen, Davis Wright Tremaine LLP, Seattle, WA, for Respondent.
*290 James L. Furman, Jr., Aiken, St. Louis & Siljeg P.S., Seattle, WA, for Estate of James W. Haviland (Other Party).
GROSSE, J.
¶ 1 The 2009 amendments to Washington's slayer statute, chapter 11.84 RCW, which prohibit a person who exploits a vulnerable adult from benefiting from the vulnerable adult's death, apply prospectively to probate petitions filed after the amendments' effective date even when the abuse and death occur before that date. The event that triggers application of the statute is the filing of the petition in probate. Here, after the decedent's 2006 will was declared invalid because of his wife's undue influence, the estate filed a petition for an adjudication that the wife was an abuser to prevent her from benefiting from the will under the amended statute. Because the petition was filed after the effective date of the amendments and because the slayer statute regulates the benefits the wife might receive after probate, the statute applies prospectively here, not retroactively as the trial court ruled. Accordingly, we reverse.

FACTS
¶ 2 In 1996, Mary Haviland,[1] then age 35, met then 85-year-old James Haviland, when he was a patient at Providence Hospital. After his discharge, Haviland transferred $100,000 to Mary to pay for her education and set up a nest egg of $300,000 to $350,000. In August 1997, Haviland and Mary married.
¶ 3 Mary spent millions of dollars during her marriage to Haviland. Substantial funds were transferred to Mary and her designees during the marriage. Haviland died at the age of 96 on November 14, 2007.
¶ 4 Haviland's 2006 will was submitted for probate and his children contested it on the basis that it was a product of Mary's undue influence. On September 14, 2009, the trial court found that (1) Mary was the decedent's fiduciary, (2) she participated in the creation of the 2006 will, (3) the will gave her an unnaturally large share of Haviland's estate in comparison to earlier estate plans, (4) Haviland was extremely vulnerable to undue influence due to physical disabilities, some degree of cognitive impairment, and the fact that Mary was his primary caregiver, and (5) Mary engaged in a systematic, persistent, and unexplained pattern of transferring assets from Haviland's estate for her own benefit and that of her designees.
¶ 5 The trial court further concluded that there was clear, cogent, and convincing evidence that the 2006 will was a product of undue influence. The court invalidated the 2006 will for undue influence, removed Mary as personal representative, and appointed Richard Furman as personal representative of the estate.
¶ 6 In November 2009, Furman filed a petition for the court to adjudicate whether Mary was an abuser as defined by the amendments to chapter 11.84 RCW, which prohibit financial abusers from inheriting from vulnerable adults. The trial court denied the petition, ruling that applying the statute, which became effective July 26, 2009, would result in an improper retroactive application. The court concluded that the event triggering application of the statute was the abuse itself, which occurred before the statute became effective.
¶ 7 The Haviland children and the estate sought discretionary review of the trial court's ruling. The trial court certified its ruling for discretionary review under RAP 2.3(b)(4). Because this issue is one of first impression, we granted discretionary review.

ANALYSIS
¶ 8 Under chapter 11.84 RCW, the slayer statute, a slayer cannot benefit as the result of the death of the decedent. In July 2009, the legislature amended the statute and expanded the scope of the statute to include abusers as well as slayers. Specifically, RCW 11.84.020 provides:
No slayer or abuser shall in any way acquire any property or receive any benefit as the result of the death of the decedent, *291 but such property shall pass as provided in the sections following.
RCW 11.84.900 further provides:
This chapter shall be construed broadly to effect the policy of this state that no person shall be allowed to profit by his or her own wrong, wherever committed.
¶ 9 The statute defines abuser as any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful financial exploitation of a vulnerable adult.[2] Absent a criminal conviction, a person may be adjudicated as an abuser based on a superior court finding by clear, cogent, and convincing evidence that a person participated in conduct constituting financial exploitation against the decedent.[3] To make that determination, the trial court must find by clear and convincing evidence:
(a) The decedent was a vulnerable adult at the time the alleged financial exploitation took place; and
(b) The conduct constituting financial exploitation was willful action or willful inaction causing injury to the property of the vulnerable adult.[[4]]
¶ 10 Here, the trial court ruled that the statute did not apply retroactively and therefore it need not make this determination. The trial court first concluded that applying the statute here to bar Mary's inheritance would be retroactive because the triggering event was the abuse and financial exploitation, which occurred before the amendments were enacted. The court then went on to determine that retroactive application here was improper, inferred by the lack of express legislative intent in chapter 11.84 RCW and specific instructions in another statute, RCW 41.04.273, that the slayer statute amendments do not apply retroactively in the context of retirement benefits. The court further concluded that the amendments were not remedial because the amendments affect Mary's property interests, thereby impacting her substantive rights, and expand, not simply promote, existing remedies by creating a new cause of action. Finally, the court noted that while not criminal, the statute imposes punitive consequences and therefore cannot be applied retroactively.
¶ 11 The Haviland children and the estate argue that the trial court erred by ruling that the triggering event is the abuse or exploitation. They contend that the triggering event is the filing of the probate petition, which occurred here four months after the effective date of the statute, and therefore the statute applies prospectively, not retroactively. We agree.
¶ 12 "A statute operates prospectively when the precipitating event for the application of the statute occurs after the effective date of the statute, even though the precipitating event had its origin in a situation existing prior to enactment of the statute."[5] Here, the trial court relied on the statutory language regulating abuse and exploitation to conclude that the triggering event was the abuse and financial exploitation of Haviland, which occurred before the effective date of the statute and therefore made application of the statute retroactive. But while the statute does address abuse and exploitation, the language in the amendments indicates a legislative focus on preventing the abuser from benefitting from any financial exploitation after the exploited person dies, rather than regulating the financial exploitation itself. RCW 11.84.150(2) also provides that a person is adjudicated as an abuser and thereby prohibited from benefiting from the vulnerable person's will when a superior court [finds] by clear, cogent, and convincing evidence that a person participated in conduct constituting financial exploitation. Thus, that finding is the triggering event and here, that finding was made after the effective date of the amendment. The statute therefore applies prospectively.
¶ 13 A similar conclusion was reached in Aetna Life Insurance Co. v. Washington Life *292 & Disability Insurance Guaranty Ass'n.[6] There, a statute required insurers who wanted to do business in Washington to become members of a guaranty association and pay an assessment if a fellow insurer received a liquidation order.[7] The insurers contended that by collecting an assessment on premiums received before the statute's enactment, the State applied the statute retroactively. The court disagreed, concluding that it was not the receipt of premiums that triggered application of the statute, but the future liquidation order by a fellow insurer, which did not occur until after the effective date of the statute. Accordingly, the court held that application of the statute was prospective. Similarly, here, the event that triggered the application of the statute was any benefit Mary might derive from probate, not the conduct that resulted in making her a potential recipient of that benefit. Accordingly, because that event occurred after the enactment of the amendments, applying the statute here is prospective.[8]
¶ 14 Mary's reliance on In re Estate of Burns[9] is misplaced. In Burns, the court addressed the applicability of a statute that authorized the State to recover Medicaid benefits from a Medicaid recipient's estate. The Washington State Department of Social and Health Services (DSHS) attempted to recover the benefits from Burns' estate that DSHS had paid to Burns before the effective date of the statute. The court held that receipt of the Medicaid benefits, rather than creation of recipient's estate, was the precipitating event of the State's right to recover benefits from recipient's estate and, thus, recovery of Medicaid benefits before enactment or amendment of statute was an improper retroactive application of the statute. The court concluded that although recipients pay off their debts to the State only upon their deaths, the purpose of the challenged provisions is to regulate the collection of debts owed by Medicaid recipients, not the disposition of their estates.[10] Applying debt principles, the court explained:
[T]he statutory provisions at issue regulate the collection of a debt. They do so by characterizing the benefits received as a debt contingent upon existence of assets of a recipient at death, and by authorizing recovery by DSHS of that debt from those assets. The precipitating event is, therefore, the receipt of the benefits giving rise to the contingent indebtedness, and not the creation of the decedent's estate.[[11]]
But here, there was no receipt of benefits before the statute's enactment as in Burns; Mary's receipt of any benefit from the estate would not occur until it was probated, which was after the statute's enactment. Thus, the precipitating event was the probate petition because it determined the receipt of benefits.
¶ 15 The trial court's 135 findings of fact include findings that Mary participated in conduct constituting financial exploitation. Whether those findings are sufficient to determine that Mary was an abuser is for the trial court to determine. Our ruling here is limited to whether the amendments apply. Because we conclude that the statute applies prospectively, we need not address the trial court's rulings that the retroactive application of the amendments here is improper.
¶ 16 We reverse the trial court and remand for further proceedings.
WE CONCUR: DWYER, C.J., and SCHINDLER, J.
NOTES
[1] To avoid confusion, Mary Haviland will be referred to by her first name.
[2] RCW 11.84.010(1).
[3] RCW 11.84.150(2).
[4] RCW 11.84.160.
[5] Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guaranty Ass'n, 83 Wash.2d 523, 535, 520 P.2d 162 (1974).
[6] 83 Wash.2d 523, 520 P.2d 162 (1974).
[7] Aetna Life, 83 Wash.2d at 534-35, 520 P.2d 162.
[8] See also Heidgerken v. State, Dep't of Natural Resources, 99 Wash.App. 380, 993 P.2d 934 (2000) (statutory amendment increasing penalty from $500 to $10,000 was not applied retroactively, notwithstanding that the underlying permit and failure to reforest occurred prior to the enactment of the amendment, because the precipitant event was failure to comply with the correction notice issued after the amendment).
[9] 131 Wash.2d 104, 928 P.2d 1094 (1997).
[10] 131 Wash.2d at 113, 928 P.2d 1094.
[11] 131 Wash.2d at 115, 928 P.2d 1094.